# 22-1283

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

---

JIHSHYR YIH,

Plaintiff-Appellant,

v.

TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY, LTD,

Defendant-Appellee.

---

On Appeal from the United States District Court

for the Southern District of New York

---

Brief of Appellant JihShyr Yih

JihShyr Yih, Pro Se

2474 Trelawn Street

Yorktown Heights, New York 10598

914-440-3478

1

TABLE OF CONTENTS

Page(s)

Table of Authorities..................................................................4

Statement of Subject Matter and Appellate Jurisdiction.........................6

Statement of the Issues Presented for Review..................................6

Statement of the Case...............................................................7

Statement of the Facts...............................................................9

     I. The Parties: Yih and TSMC.............................................9

     II. Acts of TSMC or Its Agent TSMC NA...............................10

     III. Interactions Between Yih and TSMC or Its Agent LGR.........................13

     IV. TSMC's Service Agreement for the Summons and Complaint...............17

Summary of the Argument.........................................................17

Standard of Review..................................................................18

Argument...............................................................................19

     I. Whether TSMC Untimely Removed the Case Under 28 U.S.C. § 1446(b)

          and Defaulted?..................................................................19

          A. Whether the Service of Process in the State Court Action Was

               Proper?..................................................................21

2

II. Whether New York Courts Have Personal Jurisdiction over TSMC Under CPLR § 302(a)(1 or 3 or 4) and the Due Process Clause?..................23

    A. Whether TSMC or TSMC NA Has Employed Staff in New York?24

    B. Whether TSMC Intended to Employ Yih in New York?.................26

    C. Is There a Claim Arising out of TSMC or TSMC NA Having Employed Staff in New York Under CPLR § 302(a)(1)?..........30

    D. Is There a Claim Arising out of TSMC's Tortious Act Committed Without State Under CPLR § 302(a)(3)?..................................30

    E. Is There a Claim Arising out of TSMC's Use of Real Property Within State Under CPLR § 302(a)(4)?..................................34

    F. Whether Asserting Jurisdiction over TSMC Offends the Due Process Clause?......................................................................35

Conclusion....................................................................................37

Certificate of Compliance...........................................................38

Table of Authorities

*Cosmetech Int'l, LLC v. Der Kwei Enter.*,
  943 F. Supp. 311, 316 (S.D.N.Y. 1996)..................................................22

*DeLorenzo v. Ricketts & Assocs., Ltd.*,
  No. 15-CV-2506, 2017 WL 4277177, at *7 n.13 (S.D.N.Y. Sept. 25, 2017)......25

*Emery v. Wood Industries Inc.*,
  No. Civ-98-480-M, 2001 WL 274747, at *1-3 (D. N. H. Jan. 17, 2001)............22

*Karedes v. Ackerley Group, Inc.*,
  423 F.3d 107, 113 (2d Cir. 2005)........................................................18

*McGee v. International Life Ins. Co*,
  355 U.S. 220, 78 S.Ct. 199.................................................................36

*Moscato v. MDM Grp., Inc.*,
  No. 05-cv-10313, 2008 WL 2971674, at *3 (S.D.N.Y. July 31, 2008)..............23

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344, 347-48 (1999).............................................................19

*Potter v. McCauley*,
  186 F. Supp. 146, 149 (Md. 1960)......................................................19

*Ryan v. Brunswick Corp.*,
  No. 02-cv-0133E(F), 2002 WL 1628933 (W.D.N.Y. May 31, 2002)................22

*Sea Tow Services Intern., Inc. v. Pontin*,
  2007, 472 F.Supp.2d 349.................................................................36

*U.S. Bank*,
  916 F.3d at 150–51 & n.5................................................................35

*Uniram Technology, Inc. v. Taiwan Semiconductor*,
  N.D. Cal. 2007, 617 F.Supp.2d 938....................................................36

*Unocal*,
  248 F.3d at 924...........................................................................30

*Yih v. Taiwan Semiconductor Mfg. Co.*,
  815 F. App'x 571 (2d Cir. 2020) ("Yih II").............................................7

*Yih v. Taiwan Semiconductor Mfg. Co.*,
  857 F. App'x 318 (9th Cir. 2021) ("Yih IV")........................................7

*Yih v. Taiwan Semiconductor Mfg. Co.*,
  No. 18-cv-3844, (S.D.N.Y. June 24, 2019) ("Yih I")..7, 13, 23, 24, 26, 27, 31, 34

*Yih v. Taiwan Semiconductor Mfg. Co.*,
  No. 20-cv-4184, (N.D. Cal. Oct. 27, 2020) ("Yih III")......................7, 17, 21, 22

## STATUTES

28 U.S.C. § 1291.............................................................................6

28 U.S.C. § 1332.............................................................................6

28 U.S.C. § 1446(b).............................................6, 8, 18, 19, 20, 22

28 U.S.C. § 1447(c)..........................................................................8

Due Process Clause.........................................................6, 18, 23, 35

New York Executive Law §§ 290 et seq..........................................6, 30

## RULES

CPLR § 302(a)..........................................................................6, 18, 23

CPLR § 302(a)(1).............................................................................30

CPLR § 302(a)(3).............................................................30, 31, 32, 33

CPLR § 302(a)(4).....................................................................34, 35

CPLR § 311....................................................................................21

Fed. R. Civ. P. 12(b)(2).....................................................................8

Fed. R. Civ. P. 12(b)(6).....................................................................8

McKinney's CPLR § 302...................................................................36

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Pursuant to 28 U.S.C. § 1332 the district court ("Lower Court") has original jurisdiction to hear this matter as it arises from defendant-appellee, a citizen of a foreign state, Taiwan Semiconductor Manufacturing Company, LTD's ("TSMC") violations of New York Executive Law §§ 290 et seq., and the controversy exceeds a sum or value of $75,000, exclusive of interest and costs. Lower Court enters a final judgment in favor of TSMC on 05/19/2022. Plaintiff-Appellant JihShyr Yih ("Yih") timely files a notice of appeal on 06/14/2022. Accordingly, this Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I. Whether TSMC Untimely Removed the Case from State Court to Lower Court Under 28 U.S.C. § 1446(b) and Defaulted?

A. Whether the Service of Process in the State Court Action Was Proper?

II. Whether New York Courts Have Personal Jurisdiction Over TSMC Under New York CPLR § 302(a)(1 or 3 or 4) and the Due Process Clause?

A. Whether TSMC or TSMC NA Has Employed Staff in New York?

B. Whether TSMC Intended to Employ Yih in New York?

6

C. Is There a Claim Arising out of TSMC or TSMC NA Having Employed Staff in New York Under CPLR § 302(a)(1)?

D. Is There a Claim Arising out of TSMC's Tortious Act Committed Without State Under CPLR § 302(a)(3)?

E. Is There a Claim Arising out of TSMC's Use of Real Property Within State Under CPLR § 302(a)(4)?

F. Whether Asserting Jurisdiction over TSMC Offends the Due Process Clause?

<u>STATEMENT OF THE CASE</u>

On 10/30/2017, Yih filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against TSMC, and received the Right to Sue letter from EEOC on 02/05/2018. On 04/30/2018, Yih initiated his first action *Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-cv-3844, (S.D.N.Y. June 24, 2019) (*"Yih I"*). On 06/24/2019, Judge Seibel granted TSMC's motion to dismiss for lack of personal jurisdiction, which was affirmed on 06/17/2020 in *Yih v. Taiwan Semiconductor Mfg. Co*., 815 F. App'x 571 (2d Cir. 2020) *("Yih II")*. On 06/25/2020, Yih filed suit *Yih v. Taiwan Semiconductor Mfg. Co.*, No. 20-cv-4184, (N.D. Cal. Oct. 27, 2020) (*"Yih III"*), which was dismissed on 10/27/2020 for lack of personal jurisdiction, and affirmed on 08/26/2021 in *Yih v. Taiwan*

7

*Semiconductor Mfg. Co.*, 857 F. App'x 318 (9th Cir. 2021) *("Yih IV")*. On 09/20/2021, Yih brought suit to New York State Supreme Court, Westchester County, and caused personal service of the Summons and Complaint upon TSMC. On 10/28/2021 or 38 days later, TSMC **untimely** removed the case to Lower Court. On 11/16/2021, within 30 days after the Notice of Removal, Yih timely requested a pre-motion conference in advance of moving to remand the case back to state court pursuant to 28 U.S.C. § 1447(c) and the Rules of Practice of Judge Karas. On 11/24/2022, Yih requested Clerk's Certificate of Default. On 11/30/2022, bypassing Clerk's determination on the Default Certificate, Judge Karas denied default judgment not requested by Yih. TSMC moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) on 12/10/2021. Yih moved to remand the case pursuant to 28 U.S.C. § 1446(b)(1) on 02/07/2022. On 05/19/2022, Judge Karas denied Yih's motion to remand "[b]ecause [Yih] does not argue that the Complaint was not required to be served on [TSMC], only the first clause [or within 30 days after receipt of the complaint] of § 1446 applies," and "[TSMC]'s October 28, 2021 filing was within this window and therefore was timely[;]" and granted TSMC's motion to dismiss for lack of personal jurisdiction with prejudice "[b]ecause there is no way for [Yih] to plead around the fact that [Lower Court's] lack of personal jurisdiction over [TSMC] has already been

8

conclusively decided [by Judge Seibel], and amendment would therefore be futile[.]" On 06/14/2022, Yih timely filed the Notice of Appeal from Lower Court.

STATEMENT OF THE FACTS

I. The Parties: Yih and TSMC

Yih is an Asian American, United States citizen, and New York State resident. *See* Appendix Page 36 ("A-36") ¶ 2 and A-42 ¶ 50. Yih earned his Ph.D. from the Univ. of Michigan. *Id.* He worked for over two decades at the Thomas J. Watson Research Center ("TJWRC") of the International Business Machines Corporation ("IBM") in the State with responsibilities, including semiconductors, information technology ("IT"), and administration. *Id.* "He served as a chief of staff of [TJWRC] for the management of 550 strong researchers & engineers and over $100 million in annual budgets." A-39 ¶ 27.

TSMC "has a principal place of business" in "Hsinchu, Taiwan." A-36 ¶ 3. "TSMC is a multinational company that manufactures semiconductors or chips for electronic goods, including smart phones, computers, and cars." *Id.* "TSMC has about 43,000 employees globally." *Id.* "TSMC reported 4,363 human rights cases in 2017, about one in ten employees complained." A-41 ¶ 45. 'TSMC has a fully owned subsidiary and agent, Taiwan Semiconductor Manufacturing Company,

9

North America ("TSMC NA"), headquartered in San Jose, California.' A-36 ¶ 4. 'TSMC retains an agent, Lighthouse Global Resources ("LGR") in Singapore for headhunting.' A-38 ¶ 17. 'LGR has a dedicated TSMC Account Manager and headhunter, Tammy Lee ("Lee").' *Id.*

II. Acts of TSMC or Its Agent TSMC NA

According to evidence with an exhibit from TSMC Annual Report 2012, Section "**5.3.4 450mm Wafer Manufacturing Transition**[:]" "TSMC joined the Global 450mm Consortium (G450C) located in the College of Nanoscale Science and Engineering (CNSE) of [State University of New York] at Albany, New York. The consortium includes five IC [Integrated Circuits] makers and CNSE (which represents New York State and provides the clean room facility), as well as key 450mm tool suppliers as associate members. Currently, TSMC has 16 experienced employees working in the consortium. TSMC has assumed the Operation GM [General Manager] position in the consortium and commits to lead the industry for a cost-effective 450mm transition. The clean room of G450C in Albany has been ready for tool installation since Q1 2013. [...] TSMC is also developing novel 450mm operation to bring the maximum value of semiconductor wafer fabrication to customers[.] 450mm will be a new era of semiconductor manufacturing with

10

new manufacturing capability advanced from today's leading edge technology." A-55 ¶ 2.

"According to a 09/30/2011 news article, authored by Robin K. Cooper, Reporter, Albany Business Review, TSMC will invest at least $75 million in the $4.8 billion G450C initiative in New York." A-56 ¶ 3. "G450C is a consortium chartered with driving the transition to production of chips on 450mm diameter wafers. It was formed in 2011 as a cooperation among five chip companies: Intel, TSMC, Global[F]oundries, IBM and Samsung." A-57 ¶ 14.

'According to New York State Government on 09/27/2011, "Governor Andrew M. Cuomo announced that New York State has entered agreements providing for investments ... from [TSMC and others] to create the next generation of computer chip technology ... [using] research and development facilities ... located in Albany, Canandaigua, Utica, East Fishkill, and Yorktown Heights;" and Mr. Mark Liu, TSMC Senior Vice President, Operations said, "This forward-looking initiative leverages New York State's world-class technology infrastructure and workforce by pairing it with semiconductor leaders from private industry. Achieving 450mm manufacturing will be an important industry milestone that will lead to increased

11

productivity and innovation." [...] "Mr. Mark Liu is now Chairman of TSMC; he was President and Co-CEO of TSMC from 2013 to 2018.'" A-58 ¶ 17.

"15 former or present TSMC employees and one [TSMC NA] employee [...] have worked in New York [...]: [1] C.A. Lee, at TSMC Jul 2012 – Jul 2014, Albany NY for [G450C]; [2] Cheng-Chung Chien, at TSMC from mid-year 2014, Albany NY for [G450C]; [3] Chih-Wei Huang, at TSMC Feb 2014 – Sep 2016, Albany NY for [G450C]; [4] Felix Ku, at TSMC Apr 2012 – Jul 2014, Albany NY for [G450C]; [5] Guogang (Greg) Zuo, at TSMC Corporate Planning May 2021 – present, New York City; [6] Hong Cai, at [TSMC NA] 2005 – present, Brewster NY; [7] Jasmine Lin, at TSMC May 2011 – Present, Horseheads NY; [8] John Lin, at TSMC 2012 to Jul 2014, [Albany NY for G450C;] [9] Louis Lin, at TSMC Nov 2013 – Present, Albany NY for [G450C]; [10] Michael Zhao, at TSMC Aug 2012 – Present, Poughkeepsie NY; [11] Stock Chang, at TSMC Apr 2012 – Present, Albany NY for [G450C]; [12] Vincent Huang, at TSMC Jul 2012 – Jul 2014, Albany NY for [G450C]; [13] Wen Chen, at TSMC Feb 2021 – present, New York City; [14] Yen-Jen Chen, at TSMC Dec 2018 – Present, Saratoga County NY; [15] Yi-Lang Wu, at TSMC Jan 2012 – Jan 2014, Albany NY for [G450C]; [16] Yi-Ming (Pony) Chiu, at TSMC Oct 2011 – Jul 2014, Albany NY [G450C]." A-56 ¶ 4.

"TSMC or [TSMC NA] solicits substantial business for mainframe chips and other premium server chips, from [IBM], a New York-based company." A-56 ¶ 5.

Despite revenue derived from New York customers in 2017 was held in *Yih I* as 0.003%, "TSMC derives substantial, [between] over 5% [and] over 1%, revenue from **TSMC goods used or consumed in the State**[.]" A-37 ¶ 10 (original emphasis replaced by new ones).

III. Interactions Between Yih and TSMC or Its Agent LGR

'On or about 07/14/2017, LGR headhunter, Jun Huang ("Huang"), contacted Yih for a position [...] in the [Business Operations Division ("BOD") within TSMC]. Huang and Lee each called Yih time and again to discuss TSMC jobs for him to apply.' A-38 ¶ 18. 'On or about 08/02/2017, TSMC Human Resources ("HR") Manager, Wenwei Willie Chang ("Chang"), [...] interviewed Yih at his home at night using a Skype video call.' A-38 ¶ 21. 'Chang also described a second job, which Yih believed to be VP Corporate Planning Organization ("VP CPO") [in CPO].' A-38 ¶ 25. "On or about 08/07/2017, headhunter Huang confirmed the second job [was] to develop [...] corporate planning for CEO decisions [..., and to] coordinate organizations across the company." A-39 ¶ 28. "Yih was recruited by TSMC or its agent for [the VP CPO position in CPO] with responsibilities to create

13

global initiatives." A-42 ¶ 51. And "Yih would have a regular work location at State Univ. of New York, Albany, or home office at […] Yorktown Heights, [...] to continue and expand the contacts of TSMC in the State." A-36 ¶ 6. "Yih would have used laboratory facilities at the State Univ. of New York, Albany [as a work location], as a TSMC employee for business, including research." A-37 ¶ 13. "[TSMC also employs] Guogang (Greg) Zuo, at TSMC [CPO,] from May 2021 to present, [in] New York City." A-56 ¶ 4. "On or about 08/07/2017, Chang emailed Yih that TSMC would continue the hiring process, and the next step was to interview with [Irene] Sun, VP CPO, who was also a Yih's former TJWRC colleague, whose husband was a mentor of Yih at TJWRC." A-39 ¶ 29. 'On or about 09/05/2017, Yih also received excellent evaluations from headhunter Huang: "Your skills, experience and knowledge in IT and computer science [...] truly caused a heated discussion within TSMC and you also bring us [...] credit in TSMC indirectly, they say we are truly good at searching since they can not find anyone [as] good like you [on] their own, [...]."' A-39 ¶ 30. 'Headhunter Huang also mentioned a third position in TSMC: "You [...] will be good and powerful to their IT department so [TSMC] won't lose any chance [that] could help the operation."' A-39 ¶ 31.

14

"As expected, on or about 09/25/2017, [Stephen T.] Tso ("Tso"), Sr. VP [Chief Information Officer], interviewed Yih at his home using a Skype video call. Tso was accompanied by [two other TSMC executives]." A-39 ¶ 32. "No qualifying questions were asked for this job in the interview." A-40 ¶ 40. Instead, Tso focused on prying Yih's 'marital and family related questions: "How many children do you have?" "How old are your children?" "What are your children doing now?" "What future schools are your children going to attend?" "Are you married?" and "Does your wife work?"' A-40 ¶ 35. "Yih was horrified by Tso's inappropriate questions and a pattern of these forbidden practices by TSMC supervisors in interviews, but managed to answer that Yih was married with two children, aged 23 and 21, still in schools and dependents of his." A-40 ¶ 36. 'Yih challenged the above questions by saying: "However, it is not for me to decide what my children want to do in the future," and "why don't you ask them yourself?"' A-40 ¶ 37. "Tso abruptly ended the interview by standing up and leaving the video conference room without saying goodbye." A-40 ¶ 38. "Thus, TSMC committed a *first tortious act* by playing a cruel joke, asking no job qualification questions but rather focusing on protected characteristics, showing no interests of hiring except the intent to discriminate, to an earnest job seeker. The act was extreme and outrageous, causing Yih severe emotional distress." A-40 ¶ 40.

15

'On or about 10/03/2017, headhunter Lee called Yih to inform rejections of all jobs with feedback blaming Yih for being "too senior to fit in." Yih feels extremely offended by this explanation, and wrote to headhunters Huang and Lee that he felt discriminated and retaliated against by TSMC.' A-41 ¶ 43. "TSMC commits a *second tortious act* by refusing to hire Yih." *Id.* "Consequently on or about 10/05/2017, TSMC HR Director, Terrence Chao ("Chao"), telephoned Yih to hear his concerns and his demand that TSMC correct its ill recruitment practices." A-41 ¶ 44. "Shockingly, on or about 10/13/2017, Yih received a letter from an attorney retained by TSMC." A-41 ¶ 46. 'TSMC commits a *third tortious act* in the above letter, that TSMC retaliates by threatening to sue Yih, "should [Yih] disclose to the media, the public and any other third parties related to the interview without TSMC's prior approval." Yih never agreed to such secrecy. This tortious act not only violates Yih's First Amendment Rights but also inflicts severe emotional distress by implying a large amount of time and expenses needed to defend a lawsuit, which may frighten away employers **so that Yih may never find jobs**. This tortious act is beyond all bounds of decency.' A-41 ¶ 48 emphasis added. "Yih's hiring managers included Morris Chang, Mark Liu, C. C. Wei, Tso, and Sun, who were members of the board of directors and/or the corporate management team." A-42 ¶ 54.

16

IV. TSMC's Service Agreement for the Summons and Complaint

Chao declared on 10/29/2020, acknowledging and agreeing to the method of service of process used in *Yih III* by stating that "[o]n July 7, 2020, TSMC received by mail at it's headquarters in Hsinchu, Taiwan a copy of the summons and complaint filed on June 25, 2020 in this matter. The summons and complaint were **served** via Taiwan's postal service." A-59 ¶ 2 emphasis added. The above signed service agreement is in the record. *See* Case 7:21-cv-08828-KMK, Dkt. 45 Page 4 ¶ 3 and Page 5 for the signature. "[Yih] consistently caused the respective Service of Process upon TSMC [...] in [*Yih III*] as well as [this or his second] New York action." A-57 ¶ 13. "On 09/20/2021, at 2 PM, [Yih's process server] served a true copy of the Summons and the Complaint, and a Notice of Electronic Filing (Mandatory Case) in the state supreme court action captioned *JihShyr Yih v. Taiwan Semiconductor Manufacturing Company, Ltd.*, Index No. 62821-2021, by mailing the same in a sealed envelope, with postage prepaid, in a post office within the State of New York, via U.S. Postal Service International Registered Mail First-Class with Return Receipt, to Ms. Sylvia Fang, [TSMC,] Taiwan." A-54 ¶ 2. "Ms. Sylvia Fang is Vice President, Legal and General Counsel of [TSMC]." A-54 ¶ 3.

<u>SUMMARY OF THE ARGUMENT</u>

17

Lower Court's erroneous reading of 28 U.S.C. § 1446(b) found TSMC's removal timely, but under U.S. Supreme Court's reading of § 1446(b) the removal was late, which cannot void TSMC's default for taking more time to answer than allowed by the Summons. TSMC counsel falsely declared that "Yih has not personally served TSMC in the state court action," whereas the service of process was done according to its representative's prior signed agreement in the record.

Lower Court erred in granting TSMC's motion to dismiss with prejudice because (a) TSMC had defaulted and lost its credibility, (b) Yih's second New York action has subsequent events that create a new legal situation, or material facts not discoverable with due diligence, or new causes of action that provide different bases of personal jurisdiction, (c) Lower Court accepted a material non-fact falsified by TSMC as a prior holding, and (d) Yih was not given a fair chance to amend the Complaint. Whereas, Yih showed that TSMC is subject to personal jurisdiction in New York under CPLR 302(a)(1 or 3 or 4) and Due Process.

<u>STANDARD OF REVIEW</u>

This Court reviews the denying of a motion to remand and a default certificate or judgment and granting of a motion to dismiss on the pleadings *de novo*. *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) ("We

18

apply a de novo standard of review to the grant of a motion to dismiss on the pleadings, accepting as true the complaint's factual allegations and drawing all inferences in the plaintiff's favor.").

ARGUMENT

I. Whether TSMC Untimely Removed the Case Under 28 U.S.C. § 1446(b) and Defaulted?

Lower Court erred in reading 28 U.S.C. § 1446(b) for the determination of TSMC's time limit to remove, by contradicting with that of the U.S. Supreme Court. Specifically, Lower Court mistakenly agreed with TSMC to hold that "[b]ecause [Yih did] not argue that the Complaint was not required to be served on [TSMC for the second clause of § 1446(b)(1) to be applicable,]" it was the reception of the Complaint, the event described in the first clause of § 1446(b)(1), on 09/30/2021 that triggered the 30-day period of limitations, and thus the removal on 10/28/2021 was timely. A-19. But, the U.S. Supreme Court provided a reading of 28 U.S.C. § 1446(b), addressing the pitfall of reading this law by plain language, in *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("The interpretation of § 1446(b) adopted here adheres to tradition [...] As the court in [*Potter v. McCauley*, 186 F. Supp. 146, 149 (Md. 1960)] observed, **the various**

19

**state provisions** for service of the summons and the filing or service of the complaint **fit into one or another of four main categories**. See 186 F. Supp., at 149. [...] As summarized in *Potter*, the possibilities are as follows. **First, if the summons and complaint are served together, the 30-day period for removal runs at once. Second**, if the defendant is served with the summons but the complaint is furnished to the defendant sometime after, the period for removal runs from the defendant's receipt of the complaint. **Third**, if the defendant is served with the summons and the complaint is filed in court, but under local rules, service of the complaint is not required, the removal period runs from the date the complaint is made available through filing. **Finally**, if the complaint is filed in court prior to any service, the removal period runs from the service of the summons. See *ibid*.") (emphasis added)

Yih provided in the record the reading of § 1446(b) adopted by the Supreme Court in *Murphy Bros.*("We hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"). Clearly, it was not necessary for Yih to argue that the Complaint was not required to be served on TSMC, because Yih caused simultaneous service of the Summons and Complaint on TSMC on 09/20/2021, and thus triggered TSMC's 30-day time to remove.

20

A. Whether the Service of Process in the State Court Action Was Proper?

TSMC argued that the period of limitations to remove was never triggered based on its counsel's declaration that "Yih has not personally served TSMC in the state court action." A-45 ¶ 3. Yih disagreed in the record. *First*, Chao previously declared TSMC's acceptance and agreement, regardless of any specific law or rule or court, to the service of process used in *Yih III*. The same method of service of process on TSMC was repeated in Yih's state court action. Chao's signed agreement is an exhibit in the record to satisfy the requirement for a service agreement. *See* A-59 ¶ 2. Clearly, TSMC argued incorrectly that Chao's acceptance and agreement was merely a "decision not to contest service in [*Yih III.*]" Case 7:21-cv-08828-KMK, Dkt. 49 Page 5. *Second*, the service on TSMC was also proper under New York CPLR § 311 "Personal service upon a corporation," which provides "(a) Personal service upon a corporation [...] shall be made by delivering the summons as follows: 1. upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." Clearly evidenced, Yih caused personal service upon TSMC by serving the Summons and Complaint to Ms. Fang, VP, Legal and General Counsel, who is an officer of TSMC. *See* A-54 ¶¶ 2, 3. *Third*, federal court held that "Taiwan is not a member of the Hague

21

Convention and no other international agreement exists under which [Plaintiff] might have effected service." *Emery v. Wood Industries Inc.*, No. Civ-98-480-M, 2001 WL 274747, at *1-3 (D. N. H. Jan. 17, 2001). *Fourth*, federal court also held that "Taiwan law expressly permits service upon a corporation by delivery to 'the manager concerned.' *See* Taiwan Code of Civil Procedure Article 131." *Cosmetech Int'l, LLC v. Der Kwei Enter.*, 943 F. Supp. 311, 316 (S.D.N.Y. 1996). *See* also *Ryan v. Brunswick Corp.*, No. 02-cv-0133E(F), 2002 WL 1628933 (W.D.N.Y. May 31, 2002)(quoting *Emery* and *Cosmetech*). *Last*, Taiwan law does not forbid delivery by mail for service of process, which TSMC did not dispute, and is a common practice in Taiwan, as is evidenced by the mailing methods used in *Emery*, *Ryan*, and *Yih III*. *See* A-57 ¶ 13. Therefore, TSMC's counsel falsely declared that "Yih has not personally served TSMC in the state court action," and "TSMC has not been served, as required by CPLR § [311], in the state court action[,]" which are material because the statements attack the basis of Yih's motion to remand. A-45 ¶¶ 3, 5. TSMC has thus lost its credibility. In light of the above reasons, Yih caused service of the Summons and Complaint on TSMC in the state court action upon mailing on 09/20/2021. TSMC's removal of the case from state court on 10/28/2021 was untimely under 28 U.S.C. § 1446(b), and is ground for remand to state court.

22

Consequently, TSMC defaulted. The Summons requires TSMC to answer "within 30 days after service is complete if the Summons is not delivered personally to [TSMC] within the State of New York." A-34. TSMC took 38 days to answer only with the untimely Notice of Removal, which does not void the default.

II. Whether New York Courts Have Personal Jurisdiction over TSMC Under CPLR § 302(a)(1 or 3 or 4) and the Due Process Clause?

Lower Court erred in granting TSMC's motion to dismiss because it is shown earlier that TSMC had defaulted. Therefore, its motion to dismiss was untimely.

On separate grounds, Lower Court mistook this action as essentially the same as *Yih I*, despite that there are subsequent events that create a new legal situation, new material facts not discoverable with due diligence, and new causes of action that provide different bases of personal jurisdiction. *See Moscato v. MDM Grp., Inc.*, No. 05-cv-10313, 2008 WL 2971674, at *3 (S.D.N.Y. July 31, 2008)("When a plaintiff files two actions against the same defendant in the same district, the personal jurisdiction issue is generally identical unless (1) [ ] subsequent events . . . create a new legal situation[;] (2) the plaintiff alleges new material facts that could not have been previously discovered [ ] in the exercise of due diligence[;] or (3) the second complaint alleges a new cause of action that provides a different basis for

23

personal jurisdiction[.]") Lower Court also relied on a fabricated non-fact falsified and disguised by TSMC in this action as a prior holding in *Yih I* to show that personal jurisdiction over TSMC has already been conclusively decided by Judge Seibel in *Yih I*. Whereas, Yih argued in the record that New York courts have personal jurisdiction over TSMC, without changing Judge Seibel's holding.

A. Whether TSMC or TSMC NA Has Employed Staff in New York?

Yih initially alleged in the Complaint that "TSMC or its agent has employees in the State to do business within the State or supply services in the state." A-36 ¶ 5. TSMC then argued based on Chao's declaration that "no TSMC employees are working in New York," "TSMC has no presence in the State of New York," and "TSMC … [does not] employ any employees in the State." A-50, 51 ¶¶ 6, 7, 8. Chao declared the same statements in *Yih I*, Dkt. 16 ¶¶ 6, 7, 8. Judge Seibel accepted Chao's above statements. But, TSMC did not argue in *Yih I* or in this action that TSMC **has never employed** staff, or **has never had presence**, or **will not** have such activity, in New York. In this action, there is abundant evidence from TSMC's Annual Report, industry trade news, New York State Government's press release, and LinkedIn.com that TSMC **has employed** staff in times earlier than and/or after *Yih I* in New York.

24

TSMC argued to dismiss evidence extracted from LinkedIn.com by a misplaced caselaw *DeLorenzo v. Ricketts & Assocs., Ltd*., No. 15-CV-2506, 2017 WL 4277177, at *7 n.13 (S.D.N.Y. Sept. 25, 2017) ("Plaintiff may not rely on a LinkedIn profile to establish [general] jurisdiction, as [assuming the residency in] such an online profile is hearsay and does not qualify as admissible evidence.") Whereas, it is common knowledge that although a LinkedIn user authors his or her own work experience, LinkedIn inserts a LinkedIn profile with an estimated general location of the user. In *DeLorenzo*, the location information in question inserted by LinkedIn was "Greater NYC area," which was "vague," "not necessarily in New York," not authored by the user, and hence "hearsay." But, TSMC or TSMC NA employees' experience published on LinkedIn were authored by the employees themselves, and were not held inadmissible in this action. For argument's sake, even if any exhibit from LinkedIn were to be deemed inadmissible by this Court, the existence of these named TSMC or TSMC NA employees and their New York-based work experience is corroborated by the exhibits from TSMC's Annual Report, industry trade news, and New York State Government's press release, and was not denied by TSMC or TSMC NA. Notably among such staff, Guogang (Greg) Zuo, Wen Chen, and Yen-Jen Chen started their TSMC employment in New York after Yih's opposition to TSMC's motion to

25

dismiss on 10/10/2018 in *Yih I*, which was impossible for Yih to discover with due diligence. Moreover, Guogang (Greg) Zuo, Jasmine Lin, Louis Lin, Michael Zhao, Stock Chang, Wen Chen, and Yen-Jen Chen are currently working in New York. Therefore, Chao's declaration that "no TSMC employees are working in New York," "TSMC has no presence in the State of New York," and "TSMC … [does not] employ any employees in the State," is pretext and inadequate to defeat personal jurisdiction, and is suspect. A-50, 51 ¶¶ 6, 7, 8. The fact that TSMC NA presently employs Hong Cai in Brewster, New York, is another proof for the issue. In light of the above reasons, TSMC or TSMC NA has employed staff in New York.

B. Whether TSMC Intended to Employ Yih in New York?

As described in Statement of the Facts, TSMC considered Yih for at least three jobs in three branches within TSMC, including a first job in BOD, a second job in CPO, which was newly raised in the Complaint, and for which he was denied employment as a new cause of action, and a third job in IT. It was determined in *Yih I* that the first job in BOD and the third job in IT would not employ Yih in New York because at that time TSMC "has no employees in New York," and "all of its employees within [BOD] and [IT] work in Taiwan or China." A-28. But, Judge

26

Seibel never held in *Yih I* that TSMC did not intend to employ Yih in New York for whatever job he would have. In fact, Yih argued in the record that the second job in CPO would give him a work location in New York. To preclude the issue of whether TSMC intended to employ Yih in New York, TSMC falsely created a holding of Judge Seibel that did not exist in *Yih I*, before Judge Karas in this action. TSMC first pretended to quote Chang's declaration before Judge Seibel as background that "if [Yih] got a job with TSMC, he would have to relocate to Taiwan[.]" Case 7:18-cv-3844-CS Dkt. 18 Page 2 ¶ 8. Chang's above statement was disputed by Yih and never held by Judge Seibel. *See id.* Dkt. 20 Page 9 Lines 2-10. Instead, TSMC materially changed Chang's above statement to "[h]ad [Yih] been hired, his position would have been in Taiwan," which implies that Yih must forever be located in Taiwan for whatever job he would have, and then falsified the new statement as a holding located at page "7" in Judge Seibel's Opinion and Order, Dkt. 22, *Yih I*. Case 7:21-cv-08828-KMK Dkt. 28 Page 12 Lines 8-11. It goes without saying that this falsified holding is not and cannot be at page 7 or anywhere in *Yih I*. Yih pointed out the correct version of Chang's declaration, and disputed it again in the record. *Id.* Dkt. 37 Page 21 Lines 4-10. Judge Karas erred by adopting this falsification as a prior holding such that "(4) had [Yih] been hired

27

by TSMC, his job would have been located in Taiwan[,]" to preclude the personal jurisdiction issue. A-28.

TSMC also argued that Yih subjectively believed without any basis that he would be employed in New York because TSMC had no such intention, no other employee, and *de minimis* business presence in the State. Yih disputed the above argument in the record. *First*, TSMC is not credible to dispute Yih because TSMC counsel gave false declaration in this action. *Second*, that the second job in CPO had an alleged work location in New York, was based on what Chang and Huang had described about this job to Yih. *See* A-38 ¶ 25, A-39 ¶ 28. It is reasonable that job location(s) should be a part of a job description in any recruitment process. More specific, "[o]n or about 08/07/2017, [TSMC's agent] headhunter Huang confirmed the second job," which was "to coordinate organizations across the company" for "CEO decisions" "with responsibilities to create global initiatives." A-39 ¶ 28, A-42 ¶ 51. Thus, the second job in CPO required Yih or gave him permission to work globally to coordinate all organizations of employees, and to create global initiatives for business, including in New York, where TSMC has had substantial business presence and employed staff from 2012 to present. TSMC did not and cannot argue that CPO has never employed staff in New York because

CPO has an employee, Guogang (Greg) Zuo, presently located in New York. *See*

A-56 ¶ 4. *Third*, TSMC has used real property at State Univ. of New York, Albany,

which property Yih alleged that he would have used as a regular work location, and

he argued that he was permitted to make such an initiative. *Fourth*, LGR and

TSMC purposely recruited Yih in New York, who has more than two decades

worth of forum contacts and IBM experience. TSMC knew that Yih was located in

New York during recruitment because he mentioned his location in email

correspondence with TSMC. *See* A-57 ¶ 10. *Fifth*, Chang's statement that if [Yih]

got a job with TSMC, he would have to relocate to Taiwan, was not only argued in

the record to be baseless but also irrelevant to whether TSMC intended to employ

Yih in New York because Yih would have another work location in New York, in

addition to one in Taiwan, to do TSMC's business within the State for the second

job in CPO. In fact, TSMC employees, Guogang (Greg) Zuo, Jasmine Lin, Michael

Zhao, Wen Chen, and Yen-Jen Chen, have worked in New York, and were not

relocated to Taiwan.  Therefore, Chang's declaration is a pretext against personal

jurisdiction over TSMC, and is suspect. In light of the above reasons, TSMC

intended to employ Yih in New York.

C. Is There a Claim Arising out of TSMC or TSMC NA Having Employed Staff in New York Under CPLR § 302(a)(1)?

There is a causal link between TSMC's or its agent's forum employment and Yih's injury in the State to establish specific personal jurisdiction over TSMC. To determine whether there is a claim arises out of forum-related activities, courts apply a "but for" causal link test. *Unocal*, 248 F.3d at 924. But for TSMC's or its agent's contacts with the State, would Yih's claims against TSMC have arisen? In applying a but for test, say, if TSMC or its agent has never employed staff in the State, then Yih cannot claim that he has damages in loss of employment in the State under the New York State Human Rights Law ("HRL") because he would have no employment in the State in the first place. Therefore, Yih has a claim arising out of that TSMC or its agent has employed staff in the State. TSMC's or TSMC NA's forum contacts are substantial in quality by having employees located in the State. Therefore, New York courts have personal jurisdiction over TSMC under CPLR § 302(a)(1).

D. Is There a Claim Arising out of TSMC's Tortious Act Committed Without State Under CPLR § 302(a)(3)?

30

Whether there is a claim arising out of TSMC's tortious act committed without State is another new cause of action not raised in *Yih I*. To invoke CPLR § 302(a) (3) for personal jurisdiction over TSMC, Yih must show that TSMC or its agent "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3). TSMC representative Eric Hung ("Hung") declared that "TSMC … does not solicit business in New York." A-52 ¶ 4. Judge Seibel also held that TSMC did not solicit business in New York at the time of *Yih I*. But, Yih submitted new evidence in this action that TSMC regularly solicits business from IBM, a New York-based company, to build IBM's mainframes and premium servers. The above evidence is supported by two mutually corroborating exhibits that were both published on 11-19-2018, **subsequent** to Yih's opposition on 10-10-2018 to TSMC's motion to dismiss in *Yih I*, and thus was not possible to be raised with due diligence. Hung's above statement is pretext to dispute a basis of personal jurisdiction under CPLR § 302(a) (3), and is suspect because it contradicts with the above evidence of solicitations. TSMC also did not dispute that TSMC derives substantial, between over 5% or

31

$1.6 billion and over 1% or $384 million, revenue from TSMC goods used or consumed in the State. Hung merely provided irrelevant facts about TSMC's 0.003% revenue derived in a single year of 2017 **from its New York customers**, which is independent to TSMC's revenue derived **from goods used or consumed in New York**, because "TSMC's products are semiconductor devices on wafers, which TSMC's customers make eventually into their products such as: phones, computers, TVs, and cars, which are then used or consumed by end-users." A-57 ¶ 12. For an example, company A may have zero revenue from Texas because A only sells to company B in China. But, if company B resold all these goods to Texas to be used or consumed there, then company A still has 100% revenue from goods used or consumed in Texas. It is also reasonable that TSMC expects the $75 million investment in G450C in the State to derive substantial revenue from international commerce because TSMC committed to using the new technology to sell goods worldwide, thus meeting the conditions for invoking CPLR § 302(a)(3).

Yih alleged that TSMC committed at least three aforementioned tortious acts all causing injury to him within the State. TSMC disputed the above allegation with that discrimination claims are not torts, that Yih's alleged injury did not occur in New York but in Taiwan, where TSMC's decisions were made, and that he would

32

not have worked in New York. But, Yih argued in the record that the first and second tortious acts were also workplace torts. Yih argued in the record that TSMC intended to employ him in New York, where he claims lost wages and emotional distress as injury. For the third tortious act, which was **independent of his job locations**, Yih has subsequently suffered emotional distress in New York where he has resided. TSMC's decisions being made in Taiwan is irrelevant because CPLR § 302(a)(3) addresses tortious acts committed without state.

In a but for test, say, if TSMC did not retaliate Yih for his HRL protected activity, then he could not claim that "TSMC retaliated against [him] in violations of HRL" and, thus "Yih has and continues to suffer lost wages [and] emotional distress[.]" A-44 ¶¶ 59, 60. Therefore, Yih has a claim arising out of TSMC's committing a tortious act against him causing injury to him within the State; where TSMC regularly does or solicits business, engages in other persistent course of conduct, or derives substantial revenue from goods used or consumed in the State pursuant to CPLR § 302(a)(3)(i); where TSMC expects the G450C effort to derive substantial revenue from interstate or international commerce pursuant to CPLR § 302(a)(3)(ii). In light of the foregoing reasons, New York courts have personal jurisdiction over TSMC under CPLR § 302(a)(3).

33

E. Is There a Claim Arising out of TSMC's Use of Real Property Within State Under CPLR § 302(a)(4)?

That there is a claim arising out of TSMC's **use** of real property within State, is a new cause of action, not raised in *Yih I*. TSMC inadequately and irrelevantly argued based on Hung's declaration that "TSMC has no property in New York and does not pay any property [...] taxes in the State." A-52 ¶ 3. TSMC did not argue, and it was not held in *Yih I*, that TSMC has never **used** property in New York. In opposition, Yih submitted evidence of TSMC has used clean room facility along with the rest of College of Nanoscale Science and Engineering (CNSE) of State University of New York at Albany since 2012. Hung's statement bears no relevance to the issue because TSMC does not need to have or own real property or pay taxes to **use** real property owned by CNSE. Therefore, TSMC has used real property situated within the state. The clean room facility at CNSE was for the G450C to operate tools for the development effort, which was substantial in quality for TSMC to advance its new manufacturing capability to a new era. It is already argued that TSMC required Yih to create global initiatives. Thus, Yih is justified that he would have used laboratory facilities at the State Univ. of New York, Albany, as a TSMC employee for business. In a but for test, if TSMC has never used real property situated within the State, then Yih cannot claim that he would

34

have a work location in State Univ. of New York, Albany, or home office, at which he would suffer loss of employment. Therefore, Yih has a claim arising out of that TSMC has used real property situated within the State. For the foregoing reasons, New York courts have personal jurisdiction over TSMC under CPLR § 302(a)(4).

F. Whether Asserting Jurisdiction over TSMC Offends the Due Process Clause?

TSMC argued that Yih cannot establish that TSMC purposefully availed itself of New York or that exercising jurisdiction would be reasonable in traditional notions of fair play and substantial justice. Rather, Yih argued in the record and earlier that TSMC has purposefully employed staff and used real property situated, all within the State. Therefore, TSMC purposefully availed itself of New York.

TSMC has quoted factors for whether personal jurisdiction is "reasonable," (1) the burden on TSMC, (2) the interests of the forum state, (3) Yih's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several States in furthering fundamental substantive social policies. *See U.S. Bank*, 916 F.3d at 150–51 & n.5. Yih argued in the record that TSMC has engaged in substantial economic activity in the State. The location of TSMC's headquarters is a moot point because "modern communication and transportation has made it

much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. International Life Ins. Co*, 355 U.S. 220, 78 S.Ct. 199. Moreover, in *Uniram Technology, Inc. v. Taiwan Semiconductor*, N.D. Cal. 2007, 617 F.Supp.2d 938, federal court exercised jurisdiction over TSMC without being unreasonable over TSMC headquarters' location or having international comity concerns. Answering to summons in California or New York makes little or no difference to TSMC from Taiwan. The State has its interest because TSMC violated New York Law. Yih has his interest because he has suffered injury in the State. Therefore, it is only fair that TSMC answers to summons in New York courts.

Exercising jurisdiction over TSMC is again reasonable because TSMC has transacted business with G450C for the use of the technology created and owned in the State. *McKinney's CPLR § 302* Page 122 ("New York nautical services corporation made a *prima facie* showing that due process was satisfied because its trademark and contract claims arose out of Florida licensees' contacts with New York and that exercise of personal jurisdiction comported with traditional notions of fair play and substantial justice; suit arose out of licensees' activities in New York." *Sea Tow Services Intern., Inc. v. Pontin*, 2007, 472 F.Supp.2d 349).

For the foregoing reasons and that Yih requested but was not fairly given a chance to amend his Complaint, Lower Court's judgment granting TSMC's motion to dismiss for lack of personal jurisdiction with prejudice should be reversed.

CONCLUSION

I therefore respectfully ask that this Court reverse the judgment of Lower Court with a finding of fact in favor of the appellant, and remand the case to the New York State Supreme Court, Westchester County.

Respectfully submitted,

Date: July 8, 2022                           By: /s/   JihShyr Yih
                                             JihShyr Yih, Ph.D.
                                             Pro Se Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

I, JihShyr Yih, certify that this brief contains 14,000 words or less.

By: _/s/  JihShyr Yih_