# 22-1283

## United States Court of Appeals
## For the Second Circuit

JIHSHYR YIH,

*Plaintiff-Appellant*,

v.

TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of New York, No. 7:21-cv-08828

## BRIEF FOR APPELLEE
## TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY

Jessica Kastin
Rajeev Muttreja
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: 212-326-3939
Facsimile: 212-755-7306

*Attorneys for Appellee Taiwan Semiconductor Manufacturing Company, Ltd.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Taiwan Semiconductor Manufacturing Company, Ltd. ("TSMC"), by and through its undersigned counsel, hereby makes the following disclosure:

TSMC has no parent corporation and no publicly held corporation owns 10% or more of TSMC's stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................... 1

STATEMENT OF THE ISSUES ON APPEAL ...................................... 2

STATEMENT OF THE CASE ............................................................... 2

I.    Factual Background ...................................................................... 2

    A.    TSMC Is Based in Taiwan and Has No Presence in New York. ............ 2

    B.    Yih Interviewed Via Skype for Positions Based in Taiwan. ..................... 3

II.    Litigation History ....................................................................... 6

    A.    Yih First Sues TSMC in New York. ................................... 6

    B.    Yih Next Sues TSMC in California. .................................... 8

    C.    Yih Returns to New York for a Third Suit Against TSMC. ................... 9

STANDARD OF REVIEW .................................................................. 12

SUMMARY OF ARGUMENT ........................................................... 13

ARGUMENT ........................................................................................ 14

I.    The District Court Correctly Denied Yih's Motion to Remand, Because TSMC's Notice of Removal Was Timely. ..................................................... 14

    A.    TSMC's Notice of Removal Was Timely Because It Was Filed Less Than 30 Days After TSMC Received the Complaint. .................. 15

    B.    The Time to File a Notice of Removal Never Began to Run Because Yih Did Not Properly Serve TSMC. .......................... 16

        1.    Yih did not satisfy New York law's statutory requirements for service. ....................................................................... 17

        2.    Taiwan law cannot justify Yih's failure to satisfy the requirements for service under New York law. .......................... 20

        3.    Service in prior lawsuits against TSMC is irrelevant. .................... 21

II.    The District Court Correctly Held That Yih Is Precluded from Relitigating Whether TSMC Is Subject to Personal Jurisdiction in New York. .................................................................. 23

III.    Even if Preclusion Did Not Apply, TSMC Is Not Subject to Personal Jurisdiction in New York. ................................................. 29

# TABLE OF CONTENTS
### (continued)

**Page**

A.    Yih Does Not (and Could Not Credibly) Assert That TSMC Is Subject to General Jurisdiction in New York. .......................................... 30

B.    There Is No Basis Under New York Law for Asserting Specific Jurisdiction Over TSMC. ................................................................ 31

    1.    Yih's communications with TSMC are the only potential basis for personal jurisdiction, because Yih does not show that the position at issue was in New York. ................................. 32

    2.    Yih's claims do not arise from any New York business transactions, precluding jurisdiction under CPLR § 302(a)(1). ....................................................................... 36

    3.    Yih's New York residence cannot support jurisdiction for a "tortious act" under CPLR § 302(a)(3). ........................................ 40

    4.    This case does not arise from any New York property, precluding jurisdiction under CPLR § 302(a)(4). ......................... 41

C.    The Due Process Clause Prohibits Specific Jurisdiction Over TSMC. ................................................................................ 43

    1.    TSMC did not purposefully avail itself of the New York forum. .............................................................................. 43

    2.    Subjecting TSMC to suit in New York would be unreasonable and would violate traditional notions of fair play and substantial justice. ............................................. 45

CONCLUSION ................................................................................ 46

CERTIFICATE OF COMPLIANCE ...................................................... 48

CERTIFICATE OF SERVICE .............................................................. 49

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aybar v. Aybar,*
169 A.D.3d 137 (N.Y. App. Div. 2019) ........................................................................ 30

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
171 F.3d 779 (2d Cir. 1999) ........................................................ 12, 29, 37, 38

*Barrett v. Tema Dev. (1988), Inc.,*
463 F. Supp. 2d 423 (S.D.N.Y. 2006), *aff'd,* 251 F. App'x 698 (2d Cir.
2007) ................................................................................................................ 28

*Beck v. Levering,*
947 F.2d 639 (2d Cir. 1991) ........................................................................ 24

*Beem v. Noble Group Ltd.,*
No. 14 Civ. 9046, 2015 WL 8781333 (S.D.N.Y. Dec. 14, 2015) ............................. 38

*Bill-Jay Mach. Tool Corp. v. Koster Indus., Inc.,*
29 A.D.3d 504 (N.Y. App. Div. 2006) .................................................. 36, 37

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,*
137 S. Ct. 1773 (2017) ........................................................................ 30, 45

*Brown v. Web.com Grp., Inc.,*
57 F. Supp. 3d 345 (S.D.N.Y. 2014) ........................................................ 31

*Buggs v. Ehrnschwender,*
968 F.2d 1544 (2d Cir. 1992) ........................................................................ 19

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ........................................................................ 44

*Cerberus Cap. Mgt. v. Snelling & Snelling,*
12 Misc. 3d 1187(A), 2005 WL 4441899 (N.Y. Sup. Ct. 2005) ................................ 42

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Chloe v. Queen Bee of Beverly Hills,*
616 F.3d 158 (2d Cir. 2010) ........................................ 43

*City of Buffalo v. Plainfield Hotel Corp.,*
177 F.2d 425 (2d Cir. 1949) ........................................ 23

*Cosmetech Int'l v. Der Kwei Enter. & Co., Ltd.,*
943 F. Supp. 311 (S.D.N.Y. 1996) ............................... 20

*Cowley Holdings Servs. Inc. v. Prodigy Network, LLC,*
73 Misc. 3d 1216(A), 2021 WL 5272424 (N.Y. Sup. Ct. Nov. 10,
2021) ........................................................... 18, 21

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ........................... 30, 31, 45, 46

*Deckert v. Wachovia Student Fin. Servs., Inc.,*
963 F.2d 816 (5th Cir. 1992) ...................................... 24

*Del. River Port Auth. v. Fraternal Order of Police,*
290 F.3d 567 (3d Cir. 2002) ....................................... 28

*DeLorenzo v. Ricketts & Assocs., Ltd.,*
No. 15-CV-2506, 2017 WL 4277177 (S.D.N.Y. Sept. 25, 2017), *aff'd
sub nom. DeLorenzo v. Viceroy Hotel Grp., LLC,* 757 F. App'x 6 (2d Cir.
2018) ............................................................. 35

*Emery v. Wood Indus., Inc.,*
No. Civ. 98-480, 2001 WL 274747 (D.N.H. Jan. 17, 2001) ..................... 20

*Epstein v. Univ. of the S. Pac.,*
No. 14-cv-6012, 2015 WL 4002344 (S.D.N.Y. June 19, 2015) ................... 31

*Fantis Foods, Inc. v. Standard Importing Co.,*
402 N.E.2d 122 (N.Y. 1980) ........................................ 41

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Fiedler v. First City Nat'l Bank of Houston,*
807 F.2d 315 (2d Cir. 1986) ................................................................. passim

*Fischbarg v. Doucet,*
880 N.E.2d 22 (N.Y. 2007) ................................................................. 37, 39

*Fox v. Boucher,*
794 F.2d 34 (2d Cir. 1986) ................................................................. 44

*Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.,*
No. 09-cv-956, 2010 WL 11527383 (D. Conn. May 4, 2010), *aff'd*, 438
F. App'x 27 (2d Cir. 2011) ................................................................. 46

*Glob. Gold Min., LLC v. Ayvazian,*
612 F. App'x 11 (2d Cir. 2015) ................................................................. 23

*Gmurzynska v. Hutton,*
257 F. Supp. 2d 621 (S.D.N.Y. 2003) ................................................................. 32

*Harte v. Woods Hole Oceanographic Inst.,*
495 F. App'x 171 (2d Cir. 2012) ................................................................. 46

*HDtracks.com, LLC v. 7digital Ltd.,*
No. 18-cv-5823, 2020 WL 582462 (S.D.N.Y. Feb. 6, 2020) ................................................................. 35

*Hilaire v. Dennison,*
24 A.D.3d 1152 (N.Y. App. Div. 2005) ................................................................. 19

*Hoblock v. Albany Cnty. Bd. of Elections,*
422 F.3d 77 (2d Cir. 2005) ................................................................. 12

*Hwang v. Grace Rd. Church,*
No. 14-cv-7187, 2016 WL 1060247 (E.D.N.Y. Mar. 14, 2016) ................................................................. 42

*Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982) ................................................................. 23

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) ..................................................................... 32

*Jiggetts v. MTA Metro-N. R.R.*,
    121 A.D.3d 414 (N.Y. App. Div. 2014) ..................................................... 18

*Johnson v. Ward*,
    829 N.E.2d 1201 (N.Y. 2005) ............................................................. 39, 40

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*,
    34 A.D.3d 433 (N.Y. App. Div. 2006) ....................................................... 38

*Klein v. Comm'r*,
    880 F.2d 260 (10th Cir. 1989) ................................................................... 26

*Klein v. Educ. Loan Servicing, LLC*,
    71 A.D.3d 957 (N.Y. App. Div. 2010) ....................................................... 20

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991) ........................................................................ 22

*Krepps v. Reiner*,
    588 F. Supp. 2d 471 (S.D.N.Y. 2008), *aff'd*, 377 F. App'x 65 (2d Cir.
    2010) ........................................................................................................... 26

*Lakeside Concrete Corp. v. Pine Hollow Bldg. Corp.*,
    104 A.D.2d 551 (N.Y. App. Div. 1984), *aff'd*, 482 N.E.2d 1225 (1985) ................. 17

*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
    731 F.3d 199 (2d Cir. 2013) ..................................................................... 29

*Ling Ling Yung v. Cnty. of Nassau*,
    571 N.E.2d 669 (N.Y. 1991) ..................................................................... 21

*Mareno v. Rowe*,
    910 F.2d 1043 (2d Cir. 1990) ............................................................. 40, 41

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mecca v. Lennon*,
    No. 16-CV-1414, 2017 WL 1410790 (E.D.N.Y. Apr. 18, 2017) ............................ 21

*Miron Lumber Co. v. Phylco Realty Dev. Co.*,
    151 Misc. 2d 139 (N.Y.C. Civ. Ct. 1991) ................................................... 19

*Moscato v. MDM Grp., Inc.*,
    No. 05 Civ. 10313, 2008 WL 2971674 (S.D.N.Y. July 31, 2008)
    .................................................................................................. 24, 25, 26, 27

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ........................................................................... 15, 16

*Obot v. Citibank S. Dakota, N.A.*,
    347 F. App'x 658 (2d Cir. 2009) ............................................................ 19

*Paterno v. Laser Spine Inst.*,
    23 N.E.3d 988 (N.Y. 2014) ............................................................. 37, 38, 39

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010) ................................................................... 29

*Premier Staffing Servs. of N.Y., Inc. v. RDI Enters., Inc.*,
    962 N.Y.S.2d 891 (Sup. Ct. 2013) ........................................................ 17

*Reed v. Gowanda Nursing Home*,
    5 A.D.3d 987 (N.Y. App. Div. 2004), *aff'd*, 825 N.E.2d 584 (N.Y.
    2005) ............................................................................................... 36

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
    30 F.3d 339 (2d Cir. 1994) ................................................................... 13

*Rubaii v. Lakewood Pipe of Tex., Inc.*,
    695 F.2d 541 (11th Cir. 1983) ............................................................... 24

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Ryan v. Brunswick Corp.,*
  No. 02-CV-0133E(F), 2002 WL 1628933 (W.D.N.Y. May 31, 2002)..................... 20

*Sherwood v. Olin Corp.,*
  772 F. Supp. 1418 (S.D.N.Y. 1991) ............................................................. 46

*Siddiqui v. Dep't of Soc. Servs.,*
  7 A.D.3d 941 (N.Y. App. Div. 2004) ............................................................. 19

*Stengel v. Black,*
  486 F. App'x 181 (2d Cir. 2012) ............................................................ 23, 25

*Thackurdeen v. Duke Univ.,*
  130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir.
  2016) .................................................................................................. 44

*Thompson v. Cornet Stores, Inc.,*
  107 F.3d 4, 1997 WL 62950 (2d Cir. Feb. 12, 1997) (unpublished) ................. 37, 44

*Torrent Pharms. Ltd. v. Daiichi Sankyo, Inc.,*
  196 F. Supp. 3d 871 (N.D. Ill. 2016) ........................................................... 22

*U.S. Bank Nat. Ass'n v. Bank of Am.,*
  916 F.3d 143 (2d Cir. 2019) ............................................................ 43, 44, 45

*Weerahandi v. Am. Stat. Ass'n,*
  No. 14-cv-7688, 2015 WL 5821634 (S.D.N.Y. Sept. 30, 2015) ............................. 40

*Yakin v. Tyler Hill Corp.,*
  566 F.3d 72 (2d Cir. 2009) ........................................................................ 12

*Yamaha Corp. of Am. v. United States,*
  961 F.2d 245 (D.C. Cir. 1992) ............................................................... 26, 28

*Yih v. Taiwan Semiconductor Mfg. Co.,*
  815 F. App'x 571 (2d Cir. 2020) .........................................................passim

# TABLE OF AUTHORITIES

(continued)

Page(s)

*Yih v. Taiwan Semiconductor Mfg. Co.*,
   857 F. App'x 318 (9th Cir. 2021) ..........................................................passim

*Yih v. Taiwan Semiconductor Mfg. Co.*,
   No. 18-CV-3844, 2019 WL 2578306 (S.D.N.Y. June 24, 2019), *aff'd*,
   815 F. App'x 571 (2d Cir. 2020) ..........................................................passim

*Yih v. Taiwan Semiconductor Mfg. Co.*,
   No. 5:20-cv-04184, 2020 WL 6290377 (N.D. Cal. Oct. 27, 2020),
   *aff'd*, 857 F. App'x 318 (9th Cir. 2021) .............................................passim

*Zeballos v. Tan*,
   No. 06-CV-1268, 2006 WL 1975995 (S.D.N.Y. July 10, 2006) ........................ 17, 21

*Zoriano Sanchez v. Caribbean Carriers Ltd.*,
   552 F.2d 70 (2d Cir. 1977) ........................................................... 24

**STATUTES**

28 U.S.C. § 1446 ...............................................................................passim

CPLR § 301 ............................................................................... 30, 31

CPLR § 302(a) .................................................................................passim

CPLR § 311 .................................................................................. 17

CPLR § 312-a .............................................................................. 18, 19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4 ........................................................................ 20, 21

Restatement (Second) of Judgments § 27 Comment c ................................................ 28

# INTRODUCTION

This is the third *pro se* lawsuit that Plaintiff JihShyr Yih ("Yih") has filed against Defendant Taiwan Semiconductor Manufacturing Company, Ltd. ("TSMC") in the past three years, each asserting materially identical claims. As in the first two suits, the district court properly dismissed this case for lack of personal jurisdiction over TSMC. That dismissal should be affirmed, just as it was in Yih's previous two suits.

In 2017, Yih applied for, and was rejected from, a position with TSMC in Hsinchu, Taiwan. Unwilling to accept that he was not properly suited for the position, Yih sued TSMC for employment discrimination in the Southern District of New York. The district court (Seibel, J.) dismissed the suit, holding that TSMC—a Taiwanese corporation with de minimis contacts with New York—was not subject to personal jurisdiction here. When Yih appealed, this Court affirmed the dismissal.

Yih then filed a materially identical case in the Northern District of California, albeit with new allegations that contradicted his New York complaint in an attempt to support California jurisdiction. That case was dismissed for lack of personal jurisdiction, given TSMC's minimal contacts with California. Yih again appealed, and the Ninth Circuit affirmed.

Undeterred, Yih filed suit in New York yet again on the same set of allegations—but this time in state court. After TSMC removed the case, the district court (Karas, J.) denied Yih's motion to remand and granted TSMC's motion to dismiss. As the court correctly held, basic principles of issue preclusion do not permit

1

Yih to relitigate the question of whether he can sue TSMC in New York on these claims. Even apart from preclusion, though, TSMC is (again) not subject to personal jurisdiction in New York. This Court should accordingly affirm.

## STATEMENT OF THE ISSUES ON APPEAL

1. Whether the district court correctly denied Yih's motion to remand after holding that TSMC's notice of removal was timely.

2. Whether the district court correctly held that Yih is precluded from relitigating whether TSMC is subject to personal jurisdiction in New York.

3. Whether the district court's dismissal can be affirmed on the alternative ground that TSMC is not subject to personal jurisdiction in New York.

## STATEMENT OF THE CASE

## I.    FACTUAL BACKGROUND

### A.    TSMC Is Based in Taiwan and Has No Presence in New York.

TSMC is a Taiwanese corporation whose sole business is manufacturing semiconductor devices for use in electronics. A-50, Declaration of Hen-Yih Chao ("Chao Dec.") ¶¶ 3–4. TSMC's headquarters and principal place of business are in Hsinchu, Taiwan. *Id.*; *Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844, 2019 WL 2578306, at *1 (S.D.N.Y. June 24, 2019) (Seibel, J.) ("*Yih I*"), *aff'd*, 815 F. App'x 571 (2d Cir. 2020) ("*Yih II*"). TSMC employs approximately 43,000 people, primarily at offices and factories in Taiwan. A-50, Chao Dec. ¶ 5. As of December 2021 (when TSMC moved to dismiss this case in the district court), fifteen TSMC employees were

2

working in the United States on limited-term overseas assignments, but no TSMC employees were working in New York. A-50, Chao Dec. ¶¶ 5–6. Nor were any TSMC employees working in New York at the time of the conduct alleged in the Complaint. *Yih I*, 2019 WL 2578306, at *1.

TSMC has no presence in the State of New York. A-50, Chao Dec. ¶ 7. TSMC does not maintain an office in New York, nor does it employ anyone in New York. A-51, Chao Dec. ¶ 8; *Yih I*, 2019 WL 2578306, at *1. TSMC also does not actively recruit in New York, but it occasionally interviews candidates who are from New York. SA-8, Declaration of Wenwei ("Willie") Chang ("Chang Dec.") ¶ 3; *Yih II*, 815 F. App'x at 574.

TSMC has no property in New York and pays no property or income taxes to New York State. A-52, Declaration of Chuan-Cheng Hung ("Hung Dec.") ¶ 3. TSMC is traded on the New York Stock Exchange, but it does not conduct or solicit business in New York, and it derives minimal revenue from New York, with only about 0.003% of TSMC's total 2017 revenue coming from New York-based customers. A-52, Hung Dec. ¶ 4; *Yih I*, 2019 WL 2578306, at *1; *Yih II*, 815 F. App'x at 573. Simply put, TSMC has no actual presence in the State of New York and has, at most, de minimis contact with the State.

### B.   Yih Interviewed Via Skype for Positions Based in Taiwan.

Yih's claims in this case all concern his unsuccessful attempt to be hired for a job with TSMC.  On April 6, 2017, Willie Chang, from TSMC's Recruiting

Department, sent a search request for a Senior Business Intelligence Analyst to Lighthouse Global Recruiting ("Lighthouse"), a Singapore-based headhunting firm. SA-8, Chang Dec. ¶ 4, Ex. A; *Yih I*, 2019 WL 2578306, at *2.[1] The search request specified that the job was in Hsinchu, Taiwan, in the Business Operations Division (referred to as "BUOD"). SA-8, Chang Dec. ¶ 4; SA-13, Chang Dec. Ex. A. at 2; *Yih I*, 2019 WL 2578306, at *2. All BUOD positions are in Taiwan. SA-8, Chang Dec. ¶ 5; *Yih I*, 2019 WL 2578306, at *1.

On July 31, 2017, Lighthouse submitted Yih as a potential candidate for that position. SA-9, Chang Dec. ¶ 6, Ex. B at 1. Lighthouse noted that Yih was "opened [sic] to relocate." SA-15, Chang Dec Ex. B at 1; *Yih I*, 2019 WL 2578306, at *2.

On August 3, 2017, Mr. Chang and a Section Manager from TSMC's Recruiting Department conducted a screening interview with Yih through Skype. SA-9, Chang Dec. ¶ 7; *see also* A-38, Complaint("Compl.") ¶ 21; *Yih I*, 2019 WL 2578306, at *2. Mr. Chang and Ms. Yin conducted the interview from Hsinchu, while Yih was located at his home in New York. A-38, Compl. ¶ 21; SA-9, Chang Dec. ¶ 7. During the interview, Mr. Chang asked questions related to Yih's family. A-38, Compl. ¶ 23; *Yih I*, 2019 WL 2578306, at *2. Mr. Chang explained that these questions were relevant

---

[1] Lighthouse referred to the position as Data Scientist/Business Analyst. SA-9, Chang Dec. ¶ 6.

because, if TSMC hired Yih, he would need to relocate to Taiwan, and TSMC could assist Yih's family members with relocating. SA-9, Chang Dec. ¶ 8.

After this interview, TSMC Human Resources forwarded Yih's profile to the hiring manager for the Senior Business Intelligence Analyst position. SA-9, Chang Dec. ¶ 9. The hiring manager determined that Yih did not have the appropriate background or qualifications for the position, noting that Yih's background was focused on information technology. *Id.*

Because TSMC was no longer considering Yih for the Senior Business Intelligence Analyst position, Mr. Chang suggested that Yih be considered for TSMC's Information Technology ("IT") Department. SA-9, Chang Dec. ¶ 10. At the time, there was no defined opening in the IT Department, but TSMC was willing to interview candidates because the company was interested in external talent and experience. SA-9, Chang Dec. ¶¶ 10–11; A-38–39, Compl. ¶¶ 25–28. Had Yih been hired, his position would have been in Taiwan; almost all positions in TSMC's IT Department are located there, with fewer than 1% based in China and no positions in the United States. SA-9, Chang Dec. ¶ 11; *Yih I*, 2019 WL 2578306, at *7. TSMC IT employees did not work remotely or from home on a regular basis. SA-10, Chang Dec. ¶ 13; *Yih I*, 2019 WL 2578306, at *7.

On September 25, 2017, TSMC IT managers conducted a brief Skype interview with Yih from TSMC's headquarters in Hsinchu, Taiwan. A-39–40, Compl. ¶ 32; *Yih*

*I*, 2019 WL 2578306, at *2. Yih alleges that he was again asked questions about his family. A-40, Compl. ¶ 35; *Yih I*, 2019 WL 2578306, at *2.

On October 3, 2017, TSMC informed Lighthouse that they were not interested in hiring Yih. A-41, Compl. ¶ 43. Yih learned of the decision on the same day. *Id.*; *Yih I*, 2019 WL 2578306, at *3. Yih complained to Lighthouse that he was offended by the family-related interview questions. A-41, Compl. ¶ 43.

Yih later filed a Charge with the Equal Employment Opportunity Commission ("EEOC") dated October 30, 2017, alleging that TSMC discriminated against him based on his age and retaliated against him for complaining about the interview questions. A-37, Compl. ¶ 15; SA-10, Chang Dec. ¶ 16; SA-24, Chang Dec. Ex. D; *Yih I*, 2019 WL 2578306, at *3. In February 2018, the EEOC dismissed the charge and issued a Notice of Right to Sue. A-37, Compl. ¶ 15; *Yih I*, 2019 WL 2578306, at *3.

## II. LITIGATION HISTORY

### A. Yih First Sues TSMC in New York.

On April 30, 2018, Yih filed a *pro se* complaint in the Southern District of New York, alleging (1) discrimination on the basis of sex and national origin under Title VII of the Civil Rights Act, (2) discrimination on the basis of age under the Age Discrimination in Employment Act, and (3) discrimination under the New York State Human Rights Law ("NYSHRL"). *Yih I*, 2019 WL 2578306, at *3. Pursuant to Judge Siebel's rules, TSMC requested a pre-motion conference regarding a motion to dismiss that would contest personal jurisdiction, the applicability of U.S. laws to

TSMC, and the merits of Yih's claims. At this conference, the court granted Yih leave to amend to address deficiencies identified by TSMC and by the court. *Id.* Yih used the opportunity to increase his damages demand by more than 90 times to $167 million, but he failed to meaningfully address the specific deficiencies identified by the court during the conference, or more generally, the court's lack of personal jurisdiction over TSMC. *Id.*

The district court subsequently dismissed the action. After recognizing that Yih's complaint, as a *pro se* pleading, should be "interpreted to raise the strongest arguments" it suggested, the court found that TSMC was not subject to personal jurisdiction in New York because (1) TSMC lacked a sufficient "presence" in New York to support general jurisdiction, and (2) TSMC's communications with Yih during the recruitment process were too attenuated to support specific jurisdiction. *Id.* at *3–8. With respect to the latter, the court found that the evidence did not plausibly support Yih's assertion that his job opportunity was in New York, and Yih "failed to allege any facts that controvert[ed] Defendant's affidavits that establish[ed] that no TSMC employees work remotely in New York and that no employees in the divisions in which Plaintiff sought employment work outside of Taiwan and China." *Id.* at *7. Ultimately, the district court found it "hard to see how Plaintiff could reasonably have believed he could work in New York." *Id.* Because it lacked jurisdiction, the court did not address TSMC's non-jurisdictional arguments but noted that "at least some" of them "seem well taken." *Id.* at *8.

The district court also denied leave to amend, noting that "Plaintiff has already amended once, after receiving Defendant's pre-motion letter and having the benefit of the Court's observations during a pre-motion conference." *Id.* at *8 (internal citations omitted). Moreover, the court concluded that "the problem here [with lack of personal jurisdiction] is not one that better pleading could cure." *Id.* at *9.

Yih appealed the dismissal, and this Court affirmed in a summary order. *Yih II*, 815 F. App'x at 575. First, this Court agreed that TSMC was not subject to general jurisdiction in New York. *Id.* at 573–74. Similarly, this Court agreed that specific jurisdiction was lacking because, "[a]bsent any allegation of recruiting targeted at New York, the sole communications tying TSMC to New York were those it had with Yih. These communications—two Skype interviews and emails through a third-party agent [in Singapore] regarding a position in Taiwan for which Yih was not hired—were too limited to amount to a purposeful transaction of business in New York." *Id.* at 574–75.

**B.    Yih Next Sues TSMC in California.**

On June 25, 2020, Yih sued TSMC again, this time in the Northern District of California. *See Yih v. Taiwan Semiconductor Mfg. Co.*, No. 5:20-cv-04184, 2020 WL 6290377, at *2 (N.D. Cal. Oct. 27, 2020) ("*Yih III*"), *aff'd*, 857 F. App'x 318 (9th Cir. 2021) ("*Yih IV*"). The California complaint's factual allegations and claims were materially identical to those in *Yih I*, except that Yih replaced his NYSHRL claim with one under California law. *Compare Yih I*, 2019 WL 2578306, at *1–3, *with Yih III*, 2020

8

WL 6290377, at *1–2. Like *Yih I*, *Yih III* was dismissed for lack of personal jurisdiction over TSMC, with the district court holding that TSMC was not subject to general jurisdiction in California, and that it lacked specific personal jurisdiction over TSMC because Yih's claims were unrelated to any contacts TSMC had with California. *Yih III*, 2020 WL 6290377, at *7–9. Yih appealed to the Ninth Circuit, which affirmed the dismissal. *Yih IV*, 857 F. App'x at 319.

### C.    Yih Returns to New York for a Third Suit Against TSMC.

On September 20, 2021, Yih filed the present action, his third suit against TSMC regarding his 2017 job search. This time, Yih sued in the Supreme Court of the State of New York, alleging claims exclusively under the NYSHRL. A-43–44, Compl. ¶¶ 56–59.  His factual allegations were materially identical to those in the prior two suits.

Although Yih asserted that he "file[d] this action with new evidence," the Complaint did not specify what evidence was allegedly new. A-38, Compl. ¶ 16. In a subsequent letter to the district court, however, Yih identified the "new facts" alleged in the Complaint as: "TSMC or its agent has employees in the State," "[b]ut for the discrimination, [Yih] would have a regular work location [in New York], as a TSMC employee," "[Yih] has a cause of action arises from that TSMC commits at least three tortious acts all causing injury to [him] within the State," and "TSMC or its agent uses real property situated within the State." SA-6 (quoting Compl. ¶¶ 5–6, 11–13, 16).

9

On September 30, 2021, TSMC received a copy of the Complaint by registered mail in Taiwan. A-54, Proof of Service ¶ 4. On October 28, 2021, TSMC removed the case to the U.S. District Court for the Southern District of New York, on the basis of diversity jurisdiction. A-3, at Dkt. 1. Shortly thereafter, TSMC filed a pre-motion letter for its motion to dismiss. A-4, at Dkt. 11. After Yih responded by letter, the district court directed TSMC to file its motion to dismiss. A-5, at Dkt. 13.

TSMC moved to dismiss under Rules 12(b)(2) and 12(b)(6) on multiple grounds. A-6, at Dkt. 27. As TSMC explained, dismissal was required under Rule 12(b)(2) both because *Yih I* and *Yih II* precluded Yih from relitigating whether TSMC is subject to personal jurisdiction in New York and because, regardless, the district court lacked personal jurisdiction over TSMC. *See* A-25. Moreover, even if Yih could establish personal jurisdiction over TSMC, dismissal would still be required under Rule 12(b)(6), because (1) there is no private right of action under the NYSHRL for out-of-state acts committed by foreign corporations; (2) Yih's claims are time-barred under the applicable three-year statute of limitations; and (3) Yih failed to plausibly allege any discrimination actionable under the NYSHRL. *See* A-6, at Dkt. 28, pp. 22–25.

Meanwhile, Yih filed a pre-motion letter regarding a proposed motion to remand to state court based on his contention that TSMC's notice of removal was untimely. A-5, at Dkt. 15. After TSMC responded by letter, A-5, at Dkt. 17, the district court indicated its agreement with TSMC that the removal was proper but

10

recognized that Yih could file a motion to remand if he thought otherwise. Yih subsequently filed such a motion. Yih also repeatedly sought the entry of a default judgment against TSMC, which was denied. A-5–7, at Dkt. 20, 21, 25, 26, 34, 35.

The district court denied Yih's motion to remand and granted TSMC's motion to dismiss. *See* A-10. First, the district court concluded that TSMC's notice of removal was timely, and that there was therefore no basis for remanding the case to state court. A-19. As the court explained, under 28 U.S.C. § 1446, a defendant must file a notice of removal within 30 days of receiving the complaint through proper service (unless service is not required). A-19–20. Yih undisputedly was required to serve the complaint, which TSMC received on September 30, 2021. *Id.* TSMC thus had until at least October 30, 2021 to file the notice of removal, and TSMC's October 28, 2021 removal was accordingly timely. *Id.*

Turning to TSMC's motion to dismiss, the district court found that Yih was "precluded from relitigating the issue of whether this Court can exercise personal jurisdiction over [TSMC] because this issue was conclusively decided in *Yih I*." A-25. As the court explained, while Yih's "allegations, causes of action, and theories of personal jurisdiction in the instant Action are not identical to those advanced in *Yih I* on their face, but [his] efforts at artful pleading do not change the fact that this Action is fundamentally identical to *Yih I*." A-28–29. Thus, collateral estoppel applied, and

11

the case had to be dismissed for lack of personal jurisdiction over TSMC. A-31.[2] Having held this, the district court declined to reach any of TSMC's arguments under Rule 12(b)(6). A-25. After the district court dismissed the case in its entirety with prejudice, Yih filed this appeal.

## STANDARD OF REVIEW

This Court "reviews de novo a district court's legal conclusion regarding remand." *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009). This Court also reviews de novo both the application of issue preclusion and dismissal for want of personal jurisdiction. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005) (issue preclusion); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (personal jurisdiction).

An appellate court can affirm a district court's order "on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon

---

[2] The district court also "wholly reject[ed] Plaintiff's baseless claims of perjury against Defendant's counsel," noting that "Defense counsel's conduct and statements before this Court in this Action have been entirely proper." A-20 n.2. The court further "advised" Yih "that if, in the future, he wishes to claim that a party or attorney has engaged in perjury or any misconduct, he may do so only if there is evidence to support such a claim." *Id.* While Yih's opening brief avoids using the word "perjury," he repeats similar accusations of misconduct. *See, e.g.*, Yih Br. 22 ("TSMC's counsel falsely declared . . ."); *id.* at 27 (accusing TSMC of "falsely creat[ing] a holding of Judge Seibel that did not exist in *Yih I*."). Yih's allegations remain baseless, and, had they been levied by opposing counsel (rather than a *pro se* plaintiff), would be grounds for sanctions.

which the district court did not rely." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343 (2d Cir. 1994).

## SUMMARY OF ARGUMENT

**I.** The district court correctly denied Yih's motion to remand. That motion was based solely on Yih's contention that the 30-day time limit for filing a notice to remove started to run when the summons and complaint were mailed, rather than when TSMC actually received them, rendering TSMC's notice of removal untimely. But as the district court held, the deadline established by 28 U.S.C. § 1446(b)(1) could not have started until TSMC *received* the summons and complaint. Because TSMC filed its notice of appeal within 30 days of receipt, and there is no dispute over TSMC's date of receipt, the notice was necessarily timely. Moreover, Yih's attempted service by mail was ineffective under New York law, so the time limit to file a notice of removal never even began to run.

**II.** The district court also correctly held that *Yih I* precludes Yih from arguing that TSMC is subject to personal jurisdiction in New York. Yih had a full and fair opportunity to litigate the issue of personal jurisdiction in *Yih I.* He did not provide any evidence of material changes in TSMC's New York contacts since that decision was issued or of material facts that could not have been discovered prior to that decision in the exercise of due diligence. He thus cannot relitigate personal jurisdiction, and the district court properly dismissed the case with prejudice.

13

**III**.  Even if preclusion did not apply, this case was properly dismissed because TSMC is not subject to personal jurisdiction in New York—as this Court held in *Yih II*.  Yih does not (and could not plausibly) argue that TSMC is subject to general jurisdiction here.  And TSMC is not subject to specific jurisdiction here under New York's long-arm statute, given TSMC's minimal contacts with New York.  Moreover, the Due Process Clause would prohibit the exercise of jurisdiction here in any event, because TSMC did not purposefully avail itself of the New York forum and because exercising jurisdiction would offend traditional notions of fair play and substantial justice.

For all of these reasons, the district court's holding should be affirmed.

## ARGUMENT

## I.   THE DISTRICT COURT CORRECTLY DENIED YIH'S MOTION TO REMAND, BECAUSE TSMC'S NOTICE OF REMOVAL WAS TIMELY.

Yih's argument for remand is based not only on a misunderstanding of the federal removal statute, but also on the faulty premise that his attempted service was effective under New York law.  Neither Yih's understanding of the removal statute nor his assertion that he effectively served TSMC is correct.  The plain language of the governing statutes makes clear that TSMC's notice of removal was timely, and the district court thus properly denied Yih's motion to remand.

14

**A.    TSMC's Notice of Removal Was Timely Because It Was Filed Less Than 30 Days After TSMC Received the Complaint.**

Under federal law, a notice of removal must be filed within the "shorter" of (1) "30 days after the receipt by the defendant . . . of a copy of the initial pleading" or (2) "30 days after the service of summons upon the defendant if such initial pleading . . . is not required to be served on the defendant." 28 U.S.C. § 1446(b)(1). Yih does not argue that the second clause of § 1446 should apply to this case, and TSMC's notice of removal was plainly timely under the first clause. As the declaration of Yih's process server makes clear, TSMC first received the Complaint on September 30, 2021. *See* A-54, ¶ 4. TSMC filed its notice of removal less than 30 days later, on October 28, 2021. *See* A-3, at Dkt. 1.  These facts are undisputed.

According to Yih, however, TSMC's notice of removal was nevertheless untimely because, as he sees it, § 1446 should not be interpreted according to its "plain language."  Yih Br. 19.  Under Yih's interpretation, if the complaint and summons are served together, the time for filing a notice of removal should be triggered whenever the plaintiff "serves" these documents, regardless of when they are received by the defendant.  But Yih's sole citation for this argument, *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999), holds no such thing.  In *Murphy Bros.*, the Supreme Court instead considered whether § 1446 should be understood to start the removal clock whenever a defendant receives the complaint through informal means, before formal service.  *Id.* at 347.  The Court rejected that

interpretation of the statute, holding that receipt through formal service was required to start the clock. *Id.*

Nothing in the Court's opinion, which was concerned with "assur[ing] defendants adequate time to decide whether to remove an action to federal court," *id.* at 354, suggests that the time to remove could begin running before a defendant received *any* notice of the lawsuit at all. To the contrary, the Supreme Court explained that Section 1446 was written to "ensure that the defendant would have access to the complaint before commencement of the removal period," squarely foreclosing the interpretation Yih now urges. *Id.* at 351. Unsurprisingly, then, Yih does not cite a single case applying *Murphy Bros.* as he suggests.

Under § 1446, the time to remove could not have started before TSMC received the complaint, and TSMC's notice of removal was thus timely.

## B. The Time to File a Notice of Removal Never Began to Run Because Yih Did Not Properly Serve TSMC.

Even setting aside Yih's misunderstanding of the federal removal statue, TSMC's notice of removal was necessarily timely because Yih never properly served TSMC. As *Murphy Bros.* explains, the 30-day period for removing an action to federal court does not begin to run until a defendant has been properly served. 526 U.S. at 347–48 ("[W]e hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not

by mere receipt of the complaint unattended by any formal service."). TSMC was never properly served, so the time limit in § 1446(b) was never triggered, and the notice of removal was necessarily timely. Yih's arguments to the contrary are unpersuasive.

> ### 1. Yih did not satisfy New York law's statutory requirements for service.

Because Yih attempted service only before TSMC filed its notice of removal, the adequacy of his service must be judged under New York law. *See Zeballos v. Tan*, No. 06-CV-1268, 2006 WL 1975995, at *6 (S.D.N.Y. July 10, 2006) (citing Fed. R. Civ. P. 81(c)). Yih claims that mailing the summons and Complaint to TSMC constituted proper service under CPLR § 311. Yih Br. 21. But Yih is wrong, as CPLR § 311 does not authorize service by mail. Instead, that section allows "[p]ersonal service . . . [to] be made by delivering the summons . . . to an officer, director, managing or general agent, . . . or to any other agent authorized by appointment or by law to receive service." CPLR § 311. The statute "require[s] that the summons and complaint be *handed* to an actual authorized officer." *Premier Staffing Servs. of N.Y., Inc. v. RDI Enters., Inc.*, 962 N.Y.S.2d 891, 892 (Sup. Ct. 2013) (emphasis added). Service by mail, as Yih attempted in this case, does not qualify as "personal service" under § 311. *Lakeside Concrete Corp. v. Pine Hollow Bldg. Corp.*, 104 A.D.2d 551, 551–52 (N.Y. App. Div. 1984) (rejecting service as ineffective under § 311 where process was mailed to corporate officer and hand-delivered to his son, because the

process was "not personally delivered" to the corporate officer), *aff'd*, 482 N.E.2d 1225 (1985).

If a plaintiff wishes to effect service by mail, he must instead comply with the detailed requirements of § 312-a, entitled "Personal service by mail." Before the district court, Yih asserted that his service was adequate under this section, but as TSMC explained, CPLR § 312-a contains a series of specific requirements with which Yih did not comply, and "[s]trict compliance [with the statutory requirements] is required to obtain jurisdiction over a corporation." *Cowley Holdings Servs. Inc. v. Prodigy Network, LLC*, 73 Misc. 3d 1216(A), 2021 WL 5272424, at *2 (N.Y. Sup. Ct. Nov. 10, 2021); *see also e.g.*, *Jiggetts v. MTA Metro-N. R.R.*, 121 A.D.3d 414, 415 (N.Y. App. Div. 2014) ("[T]he fact that respondents received actual notice does not confer jurisdiction upon the court."). Yih's attempted service was therefore ineffective.

*First*, § 312-a states that a plaintiff may effect service "by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint, . . . *together with* two copies of a statement of service by mail and acknowledgment of receipt in [a form specified by statute], with a return envelope, postage prepaid, addressed to the sender." CPLR § 312-a(a) (emphasis added). Yih's mailing did not meet this description, and was thus inadequate. To begin, Yih included no acknowledgment-of-receipt form and no return envelope, an omission fatal to proper service under this section. *See, e.g.*, *Jiggetts*, 121 A.D.3d at 415 (holding that service was defective when petitioner omitted "two copies of a 'statement of

service by mail' and an 'acknowledgment of receipt'"); *Hilaire v. Dennison*, 24 A.D.3d 1152, 1152 (N.Y. App. Div. 2005) (holding that service was defective when plaintiff failed to "include with the papers he attempted to serve by mail a 'statement of service by mail and acknowledgement of receipt'").

Moreover, Yih used registered mail, rather than first-class mail, which is an independent basis why his service was inadequate. *See Buggs v. Ehrnschwender*, 968 F.2d 1544, 1549 (2d Cir. 1992) (explaining that New York law provides that "use of certified instead of first class mail voids the service"); *Miron Lumber Co. v. Phylco Realty Dev. Co.*, 151 Misc. 2d 139, 142 (N.Y.C. Civ. Ct. 1991) ("[CPLR 312-a] mandates service of process by *first class* mail and *not* by certified mail as plaintiff effectuated here."); *Siddiqui v. Dep't of Soc. Servs.*, 7 A.D.3d 941, 942 (N.Y. App. Div. 2004) (affirming New York Supreme Court's holding that certified mail rendered service inadequate).

*Second*, once the prescribed papers are received by the defendant, the defendant "must complete the acknowledgement of receipt and mail or deliver one copy of it within thirty (30) days from the date of receipt. Service is complete on the date the signed acknowledgment of receipt is mailed or delivered to the sender." CPLR § 312-a(b). "Service under this section is not complete until the signed acknowledgment of receipt is mailed back to the sender." *Obot v. Citibank S. Dakota, N.A.*, 347 F. App'x 658, 660 (2d Cir. 2009). Because Yih did not include any acknowledgment of receipt form, TSMC never completed or mailed such an acknowledgment. Service thus could

not have been completed, regardless of whether Yih otherwise obtained confirmation that TSMC received the documents. *See, e.g.*, *Klein v. Educ. Loan Servicing, LLC*, 71 A.D.3d 957, 958 (N.Y. App. Div. 2010) (holding that plaintiff's evidence "that he served the defendants by certified mail, return receipt requested" was inadequate to show proper service).[3]

### 2. Taiwan law cannot justify Yih's failure to satisfy the requirements for service under New York law.

Attempting to sidestep the requirements of New York law, Yih also claims that his attempted service by mail was effective because "Taiwan is not a member of the Hague Convention," "Taiwan law expressly permits service upon a corporation by delivery to 'the manager concerned,'" and "Taiwan law does not forbid delivery by mail for service of process." Yih Br. 21–22 (quotations and citations omitted). Yih cites three cases in support of this argument, but all of them are inapposite, as they each apply *federal* law governing service. *See Emery v. Wood Indus., Inc.*, No. Civ. 98-480, 2001 WL 274747, at *1 (D.N.H. Jan. 17, 2001) (applying "Rule 4(h)(2) of the Federal Rules of Civil Procedure"); *Cosmetech Int'l v. Der Kwei Enter. & Co., Ltd.*, 943 F. Supp. 311, 316 (S.D.N.Y. 1996) (same); *Ryan v. Brunswick Corp.*, No. 02-CV-0133E(F), 2002 WL 1628933, at *1 (W.D.N.Y. May 31, 2002) (applying "Rule 4(h) of the Federal Rules of Civil Procedure"). Under federal law, service can be completed in a foreign

---

[3] Even if the return receipt could satisfy this requirement, that would mean service was completed at the earliest on the day TSMC received the summons and Complaint—meaning TSMC's notice of removal was still timely. *See supra* Part I.A.

country in the manner "prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction" whenever "there is no internationally agreed means" of service. Fed. R. Civ. Proc. 4(f)(2); *see also* Fed. R. Civ. Proc. 4(h) (permitting service on "a domestic or foreign corporation . . . in any manner prescribed by Rule 4(f) for serving an individual").

Here, however, Yih cannot rely on the Federal Rules of Civil Procedure to justify his attempt at service. *See Zeballos*, 2006 WL 1975995, at *6 (applying state law to pre-removal service); *Mecca v. Lennon*, No. 16-CV-1414, 2017 WL 1410790, at *3 (E.D.N.Y. Apr. 18, 2017) (same). New York has no provision equivalent to Federal Rule 4(f)(2) permitting service of process based on the law of a foreign jurisdiction. Instead, in New York, "the CPLR governs the procedure in civil judicial proceedings in all courts of the state and before all judges . . . ." *Ling Ling Yung v. Cnty. of Nassau*, 571 N.E.2d 669, 670 (N.Y. 1991) (quotation marks omitted); *see also, e.g.*, *Cowley Holdings Servs. Inc. v. Prodigy Network, LLC*, 73 Misc. 3d 1216(A), 2021 WL 5272424, at *2 (N.Y. Sup. Ct. Nov. 10, 2021) ("Strict compliance [with the CPLR's service provisions] is required to obtain jurisdiction over a corporation."). Plaintiff's failure to comply with the requirements for service under New York law thus rendered his service inadequate, regardless of Taiwan law.

### 3. Service in prior lawsuits against TSMC is irrelevant.

Yih further asserts that his service was proper because a TSMC representative "previously declared TSMC's acceptance and agreement, regardless of any specific law

or rule or court, to the service of process used in *Yih III*." Yih Br. 21.  In support,

Yih cites a declaration filed in *Yih III* (his suit in California) in which a TSMC

employee stated that the "summons and complaint [in that action] were served via

Taiwan's postal service."  Yih Br. 17 (quoting A-59 ¶ 2) (emphasis omitted).  But this

declaration's use of the word "served" did not concede proper service and, regardless,

is hardly an agreement to forever accept such purported service as adequate for all

purposes "regardless of any specific law or rule or court" (Yih Br. 21).  Instead, the

*Yih III* declaration at most reflects TSMC's decision not to contest service in that

action (just as TSMC did not seek dismissal on service grounds here).  The law

squarely rejects Yih's suggestion that not challenging service in one action means

forever waiving objections to that form of service in any forum.  *See Klinghoffer v.*

*S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to

jurisdiction in one case . . . extends to that case alone."); *Torrent Pharms. Ltd. v. Daiichi*

*Sankyo, Inc.*, 196 F. Supp. 3d 871, 878 (N.D. Ill. 2016) ("[W]here a party . . . has merely

failed to contest jurisdiction in some prior case, equity does not require the party to

adhere to that position in a later case.").  That result is particularly apt here, where

TSMC contested personal jurisdiction in California on other grounds, and the action

was dismissed on those grounds.

* * *

In short, TSMC was never properly served in this case, so the time for filing its

notice of removal never began to run.  Even assuming service had been proper,

though, the time to file a notice of removal could not have started running under 28

U.S.C. § 1446 until TSMC actually received the summons and Complaint. Either way,

TSMC's notice of removal was timely, and the district court correctly denied Yih's

motion to remand.

## II. THE DISTRICT COURT CORRECTLY HELD THAT YIH IS PRECLUDED FROM RELITIGATING WHETHER TSMC IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK.

As the district court explained, Judge Siebel and the Second Circuit have

already "conclusively decided" that TSMC cannot be sued in New York on the claims

at issue here. Yih's "efforts at artful pleading do not change the fact that this Action

is fundamentally identical to *Yih I*." A-25, A-28–29. Because Yih is bound by that

judgment, the district court properly dismissed this case on preclusion grounds.

"It has long been the rule that principles of res judicata apply to jurisdictional

determinations—both subject matter and personal." *Insurance Corp. of Ir., Ltd. v.*

*Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982); *see also, e.g., City of Buffalo*

*v. Plainfield Hotel Corp.*, 177 F.2d 425, 427 (2d Cir. 1949) ("Right or wrong, the decision

of the New York courts on the subject of personal jurisdiction over appellant is res

judicata and binding here."). Thus, "[a]lthough a dismissal for lack of jurisdiction is

not an adjudication on the merits of a claim, such a dismissal precludes re-litigation of

the issue it decided." *Stengel v. Black*, 486 F. App'x 181, 183 (2d Cir. 2012); *see also Glob.*

*Gold Min., LLC v. Ayvazian*, 612 F. App'x 11, 16 (2d Cir. 2015) (finding earlier arbitral

tribunal's decision precluded personal jurisdiction, because "personal-jurisdiction

determinations can have preclusive effect"); *Deckert v. Wachovia Student Fin. Servs., Inc.*, 963 F.2d 816, 819 (5th Cir. 1992) (earlier decision dismissing for lack of personal jurisdiction precluded second suit in the same state); *Rubaii v. Lakewood Pipe of Tex., Inc.*, 695 F.2d 541, 543 (11th Cir. 1983) (same).

In other words, "[t]he principles of res judicata apply to questions of jurisdiction as well as to other issues." *Zoriano Sanchez v. Caribbean Carriers Ltd.*, 552 F.2d 70, 72 (2d Cir. 1977) (quoting *American Surety Co. v. Baldwin*, 287 U.S. 156, 166 (1932)). A plaintiff is thus barred from arguing that a court has personal jurisdiction over a defendant if an "identical" question has "been actually litigated and actually decided" following a "full and fair opportunity" to litigate the issue in a prior proceeding. *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991); *see also Moscato v. MDM Grp., Inc.*, No. 05 Civ. 10313, 2008 WL 2971674, at *3 (S.D.N.Y. July 31, 2008) (applying test from *Beck* to personal jurisdiction).

Here, Yih undeniably had a "full and fair opportunity" to litigate personal jurisdiction in New York. Before his first case was dismissed, Yih had "already amended once, after receiving Defendant's pre-motion letter and having the benefit of the Court's observations during a pre-motion conference." *Yih I*, 2019 WL 2578306, at *8. He was also given the opportunity to "submit[] additional facts in connection with the motion" to dismiss and yet still failed to "me[et] his burden" on personal jurisdiction. *Id.* at *9. Yih then appealed to this Court, which affirmed the dismissal

24

after full briefing. *Yih II*, 815 F. App'x at 572–73. Nothing more is required for preclusion to attach.

Moreover, "[w]hen a plaintiff files two actions against the same defendant in the same district, the personal jurisdiction issue is generally identical." *Moscato*, 2008 WL 2971674, at *3; *see also Stengel*, 486 F. App'x at 182 (finding preclusion applied where New York courts had already "dismissed Stengel's claims arising out of the same facts alleged here" based on lack of personal jurisdiction). Specifically, preclusion generally applies unless (1) "subsequent events . . . create a new legal situation," *Moscato*, 2008 WL 2971674, at *3 (quoting *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1113 (8th Cir. 1999)) (ellipsis in original), (2) "the plaintiff alleges new material facts that could not have been previously discovered 'in the exercise of due diligence,'" *id.* (quoting Moore's Federal Practice, § 132.02), or (3) "the second complaint alleges a new cause of action that provides a different basis for personal jurisdiction." *Id.* None of these exceptions to the general rule apply here.

*First*, Yih does not provide evidence that TSMC's "New York contacts changed between the commencement" of his first lawsuit and the present suit. *Id.* And in any event, to be sufficient to "create a new legal situation," *id.*, such a change would have to be sufficiently drastic to render TSMC subject to *general* jurisdiction in New York, which even Yih does not allege here. After all, specific jurisdiction was absent in Yih's first New York suit because his claims did not arise out of any of TSMC's New York

contacts—and that fact cannot have changed in the years since. *Yih I*, 2019 WL 2578306, at *8; *Yih II*, 815 F. App'x at 574–75.

*Second*, although Yih asserts that he "file[d] this action with new evidence," A-38, Compl. ¶ 16, the discovery of new evidence can overcome preclusion only where "the plaintiff alleges new material facts that could not have been previously discovered 'in the exercise of due diligence.'" *Moscato*, 2008 WL 2971674, at *3 (quoting Moore's Federal Practice, § 132.02); *see also, e.g.*, *Krepps v. Reiner*, 588 F. Supp. 2d 471, 478 (S.D.N.Y. 2008), *aff'd*, 377 F. App'x 65 (2d Cir. 2010). Thus, "[i]f a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 257–58 (D.C. Cir. 1992); *see also Klein v. Comm'r*, 880 F.2d 260, 263 (10th Cir. 1989) ("A party may not assert a change in controlling facts when the facts allegedly showing a change in circumstances could have been discovered in the exercise of due diligence.").

No purportedly "new" facts can overcome preclusion here, because Yih does not and cannot explain why those facts could not have been discovered with due diligence prior to filing his first lawsuit. Indeed, many of the supposedly "new" facts Yih pointed to in his pre-motion letter to the district court were actually old facts that were litigated in his first case. *Compare, e.g.*, SA-6 (asserting "new" fact that Yih "would

have a regular work location" in New York but for the discrimination), *with Yih I*, 2019 WL 2578306, at *7 (rejecting Yih's claim that he would have worked in New York). So too with any supposedly new facts raised in Yih's appellate brief.

For example, Yih points to certain articles published in October and November 2018 to suggest that his new evidence could not have been discovered previously. *See* Yih Br. 31. But, as the district court correctly held, that evidence cannot overcome preclusion. To begin, while Yih contends these articles were published after he submitted his opposition to TSMC's motion to dismiss in *Yih I*, those articles predate the *decision* in *Yih I* by more than six months, and Yih offers no explanation for why he could not have provided them to the court at that time if he considers them so important. In any event, what Yih would need is not simply evidence that is new but rather new *material* facts that could not have been discovered previously. *Moscato*, 2008 WL 2971674, at *3. The 2018 articles Yih cites do not raise *any* material facts—they demonstrate at most that TSMC does business with IBM, a company headquartered in New York, *see* SA-71–73, which has at best marginal relevance to either general or specific jurisdiction. And even if TSMC's business dealings with IBM were material, Yih does not argue—much less prove—that he could not have learned of them prior to or during his first case.

*Finally*, Yih's present Complaint alleges causes of action against TSMC that are materially identical to what his first New York complaint alleged, with both pleadings setting forth materially identical allegations regarding "the same course of conduct."

A-27. As the district court put it, Yih's "efforts at artful pleading do not change the fact that this Action is fundamentally identical to *Yih I*." *Id.* While Yih invokes different provisions of New York's long-arm statute—he now raises CPLR § 302(a)(1), (a)(3), and (a)(4), whereas previously he invoked CPLR § 302(a)(1) and (a)(2)—the personal-jurisdiction question remains identical to the one decided in *Yih I* and *Yih II*. "A new contention is not . . . necessarily a new issue" for purposes of issue preclusion. *Yamaha Corp.*, 961 F.2d at 257; *see also* Restatement (Second) of Judgments § 27 cmt. c at 254 (if prior "issue was one of law, new arguments may not be presented to obtain a different determination of that issue"); *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 578 n. 22 (3d Cir. 2002) (same). Thus, preclusion applies where the "personal jurisdiction issue before the district court [is] identical to the same issue already decided . . . because the plaintiffs asserted the same cause of action based on the same set of facts." *Barrett v. Tema Dev. (1988), Inc.*, 463 F. Supp. 2d 423, 428 (S.D.N.Y. 2006), *aff'd*, 251 F. App'x 698 (2d Cir. 2007).

That conclusion is particularly clear where, as here, Yih's *pro se* complaint in the first action—like his *pro se* complaint in this action, *see* A-21—was "examined with special solicitude, [and] interpreted to raise the strongest arguments that [it] suggest[ed]." *Yih I*, 2019 WL 2578306, at *3 (internal quotations omitted). Despite this generous approach to the pleadings, Judge Seibel found no basis for exercising personal jurisdiction over TSMC—and that "the [personal jurisdiction] problem here is not one that better pleading could cure." *Id.* at *9.

28

In short, Yih's attempt to side-step the prior decisions on the determinative issue of personal jurisdiction is barred by issue preclusion. The district court properly dismissed the Complaint on this basis alone.[4]

## III. EVEN IF PRECLUSION DID NOT APPLY, TSMC IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK.

Preclusion aside, Yih has again failed to establish that TSMC is subject to personal jurisdiction in New York. To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). This requires asserting "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Id.* at 35 (citations omitted, alteration in original).

Any exercise of personal jurisdiction here must be appropriate under New York law and must also satisfy federal due process. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). Both New York and federal

---

[4] Yih asserts in passing in two sentences in his brief that he was "not given a fair chance to amend the Complaint." Yih Br. 18, 37. Because Yih fails to develop this argument, he has waived it. *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 n.1 (2d Cir. 2013) ("Issues not sufficiently argued will be deemed waived and ineligible for appellate review."). And regardless, as the district court explained, "there is no way for Plaintiff to plead around the fact that [a New York court's] lack of personal jurisdiction over Defendant has already been conclusively decided, and amendment would therefore be futile." A-31.

law recognize two types of personal jurisdiction: general and specific. CPLR §§ 301, 302; *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Aybar v. Aybar*, 169 A.D.3d 137, 143 (N.Y. App. Div. 2019). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.*

As many judges have now held, Yih cannot establish either form of jurisdiction over TSMC in New York. Another round of pleading has not changed the result. As *Yih I* explained, "the problem here is not one that better pleading could cure." 2019 WL 2578306, at *9.

### A. Yih Does Not (and Could Not Credibly) Assert That TSMC Is Subject to General Jurisdiction in New York.

In his prior actions, Yih argued that TSMC was subject to general jurisdiction in the United States—first in New York, then in California. Yih has seemingly abandoned this position, finally, and for good reason. For New York courts to properly assert general jurisdiction, TSMC's contacts with New York must be "so 'continuous and systematic' as to render [it] essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A corporation is usually "essentially at home" only where it

is incorporated or has its principal place of business. *Id.* at 137–39. Neither fact is or could be alleged in New York for TSMC. *See* A-50, Chao Dec. ¶ 3.

Moreover, CPLR § 301 permits general jurisdiction only over "corporate defendants who are present in New York 'with a fair measure of permanence and continuity.'" *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990)). None of Yih's allegations is sufficient to establish such a presence. *Id.* (rejecting general jurisdiction where defendant's ties to New York were "in-state customers, emails directed at those customers, attendance at local presentations and conferences, and five in-state employees," even though 7.5% of defendant's customers were in New York); *see also, e.g.*, *Epstein v. Univ. of the S. Pac.*, No. 14-cv-6012, 2015 WL 4002344, at *3 (S.D.N.Y. June 19, 2015). Even if credited, Yih's allegations thus fall well short of showing that TSMC is subject to general jurisdiction in New York.

### B. There Is No Basis Under New York Law for Asserting Specific Jurisdiction Over TSMC.

TSMC is also not subject to specific jurisdiction under New York's long-arm statute. *See* CPLR § 302(a). Asserting otherwise, Yih alleges that his claims arise from either: (a) business that TSMC transacts within New York, *see* CPLR § 302(a)(1); (b) a tortious act TSMC committed outside New York that caused injury in New York, *see* CPLR § 302(a)(3); or (c) TSMC's ownership, use, or possession of real property

within New York, *see* CPLR § 302(a)(4). But Yih cannot establish any of these bases for jurisdiction.

To begin, Yih's allegations are largely conclusory, and "conclusory allegations are not enough to establish personal jurisdiction." *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003); *see also, e.g.*, *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (conclusory allegations of jurisdiction are insufficient for purposes of a prima facie showing of personal jurisdiction). Even setting this issue aside, however, Yih still fails to assert any adequate basis for jurisdiction.

### 1. Yih's communications with TSMC are the only potential basis for personal jurisdiction, because Yih does not show that the position at issue was in New York.

All of the CPLR provisions that Yih invokes—Sections 302(a)(1), 302(a)(3), and 302(a)(4)—require identified connections between the plaintiff's claims, the defendant, and the State of New York. *See* CPLR § 302(a)(1) (requiring showing that claim arises from defendant's "transact[ing] any business within the state"); CPLR § 302(a)(3) (requiring showing that defendant caused "injury to person or property within the state"); CPLR § 302(a)(4) (requiring that claim arises from defendant's "own[ership], use[], or possess[ion] [of] any real property situated within the state"). But here, the universe of connections between TSMC, this case, and the State of New York is quite limited.

Specifically, Yih was physically located in New York when he interviewed, via Skype and telephone, with TSMC employees who were located in Taiwan. *See* A-38,

32

Compl. ¶ 21; SA-9, Chang Dec. ¶ 7. And Yih resided in New York during the relevant time. *See* A-36, Compl. ¶ 2. But TSMC's case-relevant conduct was otherwise unrelated to the State of New York. TSMC contracted with a Singapore recruiting firm to fill a position in Taiwan. SA-8, Chang Dec. ¶ 4. TSMC made clear to the Singapore firm that the position was in Taiwan, and TSMC never mentioned New York or even the United States as potential locations for candidates. *Id.* The decision not to hire Yih—the decision to which he objects—was made in Taiwan. SA-9, Chang Dec. ¶ 7. And there is no evidence (or allegation) that TSMC even knew where Yih resided until after they decided to interview him. In short, the only thing that TSMC did that related to New York was to talk briefly by videoconference and telephone with someone who happened to be in New York. A-38, Compl. ¶ 21; SA-9, Chang Dec. ¶ 7. For each cited provision of the CPLR, then, the key question is whether those limited communications satisfy the jurisdictional requirements.

To show a greater connection to New York, Yih claims that, had TSMC hired him, he would have worked in New York. But that allegation cannot serve as a basis for finding personal jurisdiction in this case. As Judge Seibel and this Court both concluded in Yih's first action against TSMC, that allegation is not plausible. As Judge Siebel put it, "it is hard to see how Plaintiff could reasonably have believed he could work in New York." *Yih I*, 2019 WL 2578306, at *7; *see also Yih II*, 815 F. App'x at 575

33

(rejecting contention that Plaintiff would have worked in New York).[5] Tellingly, Yih changed his tune in his California suit against TSMC, representing that he would have "worked in or telecommute[d] into multiple global locations, including San Jose, California." *See* Complaint, *Yih III*, No. 5:20-04184, Dkt. 1, ¶ 11 (N.D. Cal. June 25, 2020).

Despite claiming to have new evidence regarding the job's location, *see* Yih Br. 26–29, Yih nowhere alleges that anyone told him that he could work in New York or otherwise explains why he believed the position would be in New York. Instead, Yih focuses on irrelevant details, such as quibbling over whether TSMC's representatives said Yih "would have to relocate to Taiwan" or instead that the "position would have been in Taiwan," even though neither phrasing suggests the job was in New York. Yih Br. 27. In a similar non sequitur, he suggests that a job description involving "responsibilities to create global initiatives" somehow implied a job location in New York. *Id.* 28. Such unreasonable inferences cannot overcome TSMC's sworn declarations.

---

[5] Yih asserts that TSMC "falsified" this holding from *Yih I*, and that Judge Karas "erred by adopting this falsification as a prior holding." Yih Br. 27–28. *Yih I* speaks for itself. *See Yih I*, 2019 WL 2578306, at *7 (S.D.N.Y. June 24, 2019). This Court, too, already held that "Yih's subjective belief about the locus of the job does not confer personal jurisdiction because it does not show that TSMC intended to employ him in New York." *Yih II*, 815 F. App'x at 575.

Finally, Yih seeks to rely on a series of LinkedIn profiles to suggest that TSMC has previously employed or currently employs individuals in New York. But a plaintiff "may not rely on a LinkedIn profile to establish jurisdiction, as such an online profile is hearsay and does not qualify as admissible evidence." *DeLorenzo v. Ricketts & Assocs., Ltd.*, No. 15-CV-2506, 2017 WL 4277177, at *7 n.13 (S.D.N.Y. Sept. 25, 2017), *aff'd sub nom. DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6 (2d Cir. 2018).[6] Regardless, even evidence of other individuals who worked in New York in other positions at other times could not demonstrate that Yih himself was being considered for a position in New York.

At bottom, even if Yih were somehow under the false impression that he was being considered for a position in New York, such a mistaken belief could not justify personal jurisdiction over TSMC. Courts—including this Court in *Yih II*—routinely refuse to exercise personal jurisdiction based on plaintiffs' mistaken beliefs. *See Yih I*, 2019 WL 2578306, at *7 ("Plaintiff's subjective belief cannot create jurisdiction."); *Yih II*, 815 F. App'x at 575 ("Yih's subjective belief about the locus of the job does not confer personal jurisdiction because it does not show that TSMC intended to employ him in New York."); *HDtracks.com, LLC v. 7digital Ltd.*, No. 18-cv-5823, 2020 WL 582462, at *3 (S.D.N.Y. Feb. 6, 2020) (personal jurisdiction could not be based on

---

[6] Plaintiff employed the same tactic of submitting "facts" obtained from LinkedIn when pursuing his claims in California. There, the district court rejected the evidence as inadmissible. *See Yih III*, 2020 WL 6290377, at *1.

plaintiff's incorrect "belie[f] it was negotiating with and dealing with [defendant] because the personal jurisdiction inquiry focuses on what *the defendant* did and *its* sufficient minimum contacts—not what the plaintiff believed or understood"); *Reed v. Gowanda Nursing Home*, 5 A.D.3d 987, 988 (N.Y. App. Div. 2004) ("mistaken belief that the defendant was a corporation authorized to do business in New York" would not support jurisdiction), *aff'd*, 825 N.E.2d 584 (N.Y. 2005).

Thus, Yih's mistaken—and less than credible—alleged belief that he could work from New York cannot confer jurisdiction in the face of sworn statements and other evidence that establishes that the jobs were in Taiwan, as previously held by multiple courts. Yih therefore must rely solely on his residence in New York and his communications with TSMC in attempting to satisfy the jurisdictional requirements of the cited CPLR provisions. For the reasons described below, those facts are far from enough to support personal jurisdiction.

### 2. Yih's claims do not arise from any New York business transactions, precluding jurisdiction under CPLR § 302(a)(1).

To establish jurisdiction under CPLR § 302(a)(1), Yih must show that TSMC "transact[ed] . . . business within [New York], and that the cause of action sued upon arose from that transaction." *Bill-Jay Mach. Tool Corp. v. Koster Indus., Inc.*, 29 A.D.3d 504, 505 (N.Y. App. Div. 2006) (citation omitted, alterations in original). In other words, § 302(a)(1) requires that TSMC "engaged in some purposeful activity within the State and [that] there [was] a substantial relationship between [that] activity and

the plaintiff's cause of action." *Id.* at 506 (citations omitted). Under this provision, Yih thus must establish both that (1) TSMC purposefully transacted business within New York, and (2) his claim arises out of that activity. He can do neither.

*First*, Yih's allegations do not demonstrate that TSMC purposefully directed *any* activity to New York, much less any "transaction of business." "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (citations omitted). But "[n]ot all purposeful activity . . . constitutes a 'transaction of business' within the meaning of [§] 302(a)(1)." *Id.* Instead, under § 302(a)(1), the "transaction of business" occurs only when a "non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 993 (N.Y. 2014). A "temporary, random, or tenuous relationship" with New York will not suffice. *Thompson v. Cornet Stores, Inc.*, 107 F.3d 4, 1997 WL 62950, at *1 (2d Cir. Feb. 12, 1997) (unpublished).

Notably, § 302(a)(1) jurisdiction cannot rest "solely on the basis of defendant's communication from another locale with a party in New York." *Fiedler v. First City Nat'l Bank of Houston*, 807 F.2d 315, 318 (2d Cir. 1986) (quotation marks omitted). Instead, defendants must, at least, "project [themselves] into New York to participate in . . . *activities localized in the state*." *Bank Brussels*, 171 F.3d at 788 (emphasis added). And there "must be some transaction attributable to the [defendant] *which occurs in New*

37

York." *Id.* at 787 (quotation marks omitted). Without such in-state activity, § 302(a)(1) is inapplicable.

Courts thus consistently decline to exercise specific jurisdiction under § 302(a)(1) over defendants whose only relevant acts are communications into New York. In *Paterno*, for example, the New York Court of Appeals found no personal jurisdiction over a Florida medical institute for a New York plaintiff's malpractice suit, even though the defendant and plaintiff communicated about the underlying surgeries extensively for months and the defendant advertised in New York. *See* 23 N.E.3d at 990–92. Because the surgeries occurred in Florida, Florida was the locus of the parties' interactions, with the communications meant to "assist plaintiff in deciding whether to arrange for … medical services in Florida." *Id.* at 994. The defendant thus did not "transact business" in New York under § 302(a)(1). *See id.* at 994–97; *see also, e.g.*, *Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 34 A.D.3d 433, 434–35 (N.Y. App. Div. 2006) (Florida "defendants' acts of faxing [] executed contracts to New York and of making a few telephone calls do not qualify as purposeful acts" because such "contacts do not constitute purposeful availment of the New York forum, but rather were merely attempts to contact the plaintiff"); *Fiedler*, 807 F.2d at 318 ("two telephone calls and a mailing from Texas" inadequate to create jurisdiction); *Beem v. Noble Group Ltd.*, No. 14 Civ. 9046, 2015 WL 8781333, at *1–4 (S.D.N.Y. Dec. 14, 2015) ("[L]imited electronic or telephonic communication between an out-of-state Defendant and a New York Plaintiff regarding services to be performed outside of

38

New York, without more, will not justify long-arm jurisdiction under § 302(a)(1)'s 'transacts business' clause.").

These standards establish that § 302(a)(1) does not reach TSMC here. As explained above, TSMC did nothing in connection with New York except talk briefly by videoconference and telephone with Yih, who happened to be in New York. A-38, Compl. ¶ 21; SA-9, Chang Dec. ¶ 7. This is simply "communication from another locale with a party in New York" regarding services to be performed outside of New York. *Fiedler*, 807 F.2d at 318. That does not support jurisdiction under § 302(a)(1). Indeed, this case is materially indistinguishable from *Paterno*, in which the Florida defendant communicated extensively with a New York plaintiff about surgical procedures that would take place in Florida, but still could not be sued in New York for malpractice. There is no way of understanding TSMC's actions as "[p]urposeful[ly] . . . avail[ing] itself . . . of the privilege of conducting activities within the forum State," and § 302(a)(1) is thus inapt. *Fischbarg*, 880 N.E.2d at 26 (citation omitted). Instead, asserting jurisdiction here "would set a precedent for almost limitless jurisdiction." *Paterno*, 23 N.E.3d at 995.

*Second*, jurisdiction under § 302(a)(1) is also unavailable because Yih's claims do not "arise from" TSMC's brief communications with him, as New York's long-arm statute requires. A claim "aris[es] from" a particular transaction when there is a "*substantial* relationship . . . between a defendant's transactions in New York and a plaintiff's cause of action." *Johnson v. Ward*, 829 N.E.2d 1201, 1202 (N.Y. 2005)

(emphasis added). No such relationship is present here. Yih complains about a hiring decision made in Taiwan for a Taiwanese position. The video calls between TSMC and Yih have only an attenuated connection to New York, when Yih could have taken them from anywhere, and when TSMC did not ask for candidates in New York (or even in the United States). Yih's claims cannot "arise" in New York on the basis of such a "coincidental" connection. *Id.* at 1203.

### 3. Yih's New York residence cannot support jurisdiction for a "tortious act" under CPLR § 302(a)(3).

CPLR § 302(a)(3) allows personal jurisdiction over a defendant who commits a "tortious act" outside New York if the tortious act "caus[e] injury to person or property within the state" and other conditions are satisfied. This provision cannot apply here for at least two reasons.

First, under New York law, "discrimination claims are not torts," and thus cannot form the basis of jurisdiction under § 302(a)(3). *Weerahandi v. Am. Stat. Ass'n*, No. 14-cv-7688, 2015 WL 5821634, at *4 (S.D.N.Y. Sept. 30, 2015) (citing *Lane-Weber v. Plainedge Union Free Sch. Dist.*, 213 A.D.2d 515, 516 (N.Y. App. Div. 1995); *Cooper v. Morin*, 50 A.D.2d 32, 36 (N.Y. App. Div. 1975)).

Second, Yih's "injury" did not occur in New York. "An injury [for purposes of § 302(a)(3)] does not occur within the state simply because the plaintiff is a resident." *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990). Instead, the "situs of the injury is the location of the original event which caused the injury, not the location where the

resultant damages are subsequently felt by the plaintiff." *Id.* (quoting *Carte v. Parkoff*, 152 A.D.2d 615, 616 (N.Y. App. Div. 1989)). Thus, jurisdiction "must be based upon a more direct injury within the State . . . than the indirect financial loss resulting from the fact that the injured person resides . . . there." *Fantis Foods, Inc. v. Standard Importing Co.*, 402 N.E.2d 122, 126 (N.Y. 1980).

Under this standard, Yih's alleged injury occurred in Taiwan—where TSMC's decisions were made, and where Yih would have worked had he been hired by TSMC—not in New York. *See Mareno*, 910 F.2d at 1046 (injury of unlawful discharge occurred at job's New Jersey location, notwithstanding plaintiff's New York residence). Yih argues that this test should somehow apply differently given his asserted emotional distress, but he offers no explanation or legal support for that approach. Yih Br. 32–33. Section 302(a)(3) thus cannot provide personal jurisdiction over TSMC in this case.

> **4. This case does not arise from any New York property, precluding jurisdiction under CPLR § 302(a)(4).**

Yih's final asserted basis for jurisdiction, CPLR § 302(a)(4), allows for personal jurisdiction over a defendant who "owns, uses or possesses any real property situated within the state," but only if the "cause of action aris[es]" from that ownership, use, or possession of the property. There is no basis for jurisdiction over TSMC under this provision, as TSMC does not own, use, or possess property in New York.

Yih alleges that this requirement is satisfied because TSMC historically "used" a facility in Albany as part of its involvement in the G450C Consortium. Yih Br. 34.[7] But the most recent reference to the G450C Consortium that Yih cites comes from 2014, years before the events at issue. SA-52. Yih offers no evidence that TSMC has been involved in G450C more recently, much less any evidence linking his claims to G450C. Any real property involved in G450C is thus irrelevant for purposes of § 302(a)(4).

Ultimately, Yih does not and cannot link his claims to any real property owned, used, or possessed by TSMC in New York, as § 302(a)(4) requires. Section 302(a)(4) thus has no relevance in this matter. *See, e.g.*, *Cerberus Cap. Mgt. v. Snelling & Snelling*, 12 Misc. 3d 1187(A), 2005 WL 4441899, at *13 (N.Y. Sup. Ct. 2005) ("Unless the parties have actually entered into a transaction that involves New York real property, that a defendant merely owns real property in New York is not sufficient to support the court's exercise of jurisdiction under CPLR 302(a)(4)."); *Hwang v. Grace Rd. Church*, No. 14-cv-7187, 2016 WL 1060247, at *4 n.6 (E.D.N.Y. Mar. 14, 2016).

---

[7] The G450C Consortium was a public-private research program at SUNY Polytechnic Institute in which five of the world's largest chipmakers, including TSMC, participated. The Consortium dissolved in 2016, before Yih was ever contacted about a TSMC position. *See* Larry Rulison, *NY: Demise of G450C Wasn't Over Money*, Times Union (Jan. 13, 2017), *available at* https://www.timesunion.com/tuplus-business/article/NY-Demise-of-G450C-wasn-t-over-money-10857261.php.

42

### C.    The Due Process Clause Prohibits Specific Jurisdiction Over TSMC.

Even if New York law authorized specific jurisdiction here, the federal Due Process Clause would prohibit it. "The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant." *U.S. Bank Nat. Ass'n v. Bank of Am.*, 916 F.3d 143, 150 (2d Cir. 2019). "First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State." *Id.* "Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct." *Id.* "Finally, the exercise of jurisdiction must be reasonable under the circumstances." *Id.* The ultimate inquiry is whether personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 164–65 (2d Cir. 2010). Here, Yih cannot establish that TSMC "purposefully availed" itself of a New York forum or that exercising jurisdiction would be "reasonable."

### 1.    TSMC did not purposefully avail itself of the New York forum.

To constitute purposeful availment, "the defendant's suit-related conduct must create a substantial connection with the forum State—that is, the defendant *[it]self* must create those contacts, and those contacts must be with the forum State itself, *not simply with persons who reside there*." *U.S. Bank*, 916 F.3d at 150 (quotations omitted; alteration in original; second emphasis added). This "requirement ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Here, TSMC's contacts with New York are plainly "fortuitous" and "attenuated." *Id.* TSMC's *only* suit-related connection to New York is that it spoke to Yih, who "simply" happens to "reside there." *U.S. Bank*, 916 F.3d at 150. Yih's residence and location at the time of the call do not mean that TSMC made a purposeful connection "with the 'forum State itself.'" *Id.* TSMC did not seek out New York applicants. Nor did it know that Yih would be in New York during the interviews. Like cell phones, videoconferencing can be used anywhere—and it was thus pure happenstance that Yih was in New York. *See, e.g.*, *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 807–08 (S.D.N.Y. 2015) (holding that plaintiffs' location during phone call did not support jurisdiction because the call "was made irrespective of their location at the time of the call"), *aff'd*, 660 F. App'x 43 (2d Cir. 2016).

Moreover, this Court has explicitly stated that it "would offend . . . due process principles" to force a defendant to litigate a claim in a forum with which its only contact is a brief communication. *Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986). "A temporary, random, or tenuous relationship with the forum through one telephone call is not the type of purposeful contact required" to "meet the due process requirement of minimum contacts." *Thompson*, 1997 WL 62950, at *1. Two calls are no different.

   2.   **Subjecting TSMC to suit in New York would be unreasonable and would violate traditional notions of fair play and substantial justice.**

Finally, even if Yih somehow satisfied both the New York long-arm statute and the Due Process Clause's purposeful-availment requirement, exercising jurisdiction over TSMC would flout "traditional notions of fair play and substantial justice" and would not be "reasonable under the circumstances." *U.S. Bank*, 916 F.3d at 149–50 (citations omitted). Factors bearing on whether personal jurisdiction is "reasonable" include: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several States in furthering fundamental substantive social policies." *Id.* at 150–51 & n.5 (quotation marks omitted). Each factor cuts against jurisdiction here.

The first factor, "the burden on the defendant," is the "primary concern" of the reasonableness analysis, and addresses both "the practical problems resulting from litigating in the forum" and "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers Squibb*, 137 S. Ct. at 1780. The "practical" and "abstract" burdens on TSMC are significant here. Distance alone will impose major burdens on TSMC, which is located on the other side of the globe. Plus, there are special concerns of "international comity" when asserting personal jurisdiction over a foreign defendant. *Daimler*, 571 U.S. at 141. "Considerations of international rapport" should "reinforce"

45

the "determination that subjecting" TSMC to jurisdiction here is not in "accord with the fair play and substantial justice [that] due process demands." *Id.* at 142 (quotation marks omitted).

The remainder of the factors also favor TSMC. New York's interest in this dispute is non-existent, as the New York laws at issue do not even apply to TSMC, a Taiwanese company hiring for a position in Taiwan. *See, e.g.*, *Sherwood v. Olin Corp.*, 772 F. Supp. 1418, 1421–25 (S.D.N.Y. 1991); *Harte v. Woods Hole Oceanographic Inst.*, 495 F. App'x 171, 172 (2d Cir. 2012). Relatedly, Plaintiff's interest in obtaining relief in New York is minimal, because he should have expected that a dispute about foreign employment with a foreign company would likely have to take place in a foreign jurisdiction. *See, e.g.*, *Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 09-cv-956, 2010 WL 11527383, at *4 (D. Conn. May 4, 2010) ("Plaintiffs should have reasonably expected that some dispute related to its outsourcing would occur in India rather than another state within the United States."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011). Efficiency considerations also heavily cut against jurisdiction. Almost every important witness, document, or piece of evidence in this dispute is in Taiwan or Singapore. Only Yih is in New York. That alone does not justify a lawsuit against TSMC here.

## CONCLUSION

For the reasons stated, this Court should affirm the district court's dismissal of Yih's complaint with prejudice.

Dated:  October 6, 2022                    Respectfully submitted,


                                           *s/ Rajeev Muttreja*

                                           Jessica Kastin
                                           Rajeev Muttreja
                                           JONES DAY
                                           250 Vesey Street
                                           New York, NY  10281
                                           Telephone: 212-326-3939
                                           Facsimile: 212-755-7306
                                           jkastin@jonesday.com

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 12,211 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface in fourteen-point type.

*s/ Rajeev Muttrja*
Rajeev Muttreja

Dated:  October 6, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I caused a true and correct copy of the foregoing brief to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*s/ Rajeev Muttreja*
Rajeev Muttreja

Dated: October 6, 2022